PETER BORN, Appellant, *v.* HENRY SCHRENKEISEN et al., Respondents.

Where there is no mistake as to the terms of an agreement, but through a mistake of the scrivener, or by any other inadvertence in reducing it to writing, the instrument does not express the agreement actually made, it may be reformed by the court; it is only where an action is to reform the agreement itself that it is necessary to allege in the pleadings and prove on the trial that the mistake was mutual.

Where a written instrument provides that it shall become void in case of default by one party to perform some covenant therein contained, as a general rule, it becomes void only upon the claim and at the option of the party for whose benefit the covenant was inserted and who is injured by the default.

Where, in an action upon a written contract, the defendant claims a mistake and seeks to have the contract reformed because thereof, he should allege the facts entitling him to the reformation by way of counter-claim, and should pray judgment for such reformation.

Where, however, the answer averred the facts but omitted the prayer, and proof of the facts was given on the trial without objection, and the omission was not in any way, so far as appeared by the record on appeal, called to the attention of the trial court. *Held,* that the objection must be deemed to have been waived.

Where in such case the trial court did not order the agreement to be reformed, and it was not reformed by the judgment, *held,* that this was technical error; but that, as all the elements for reformation appeared in the record on appeal to this court, the judgment might be modified here so as to grant a reformation.

(Argued May 3, 1888; decided June 5, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 3, 1886, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*Henry Wehle* for appellant. As the court does not say in any finding that the parties misunderstood the papers which they signed, or acted under a mutual mistake, a reformation of the contract could not be had. (*Nevens* v. *Dunlap*, 33 N. Y. 676; Story's Eq. Jur. 157; *Lyman* v. *Utica Ins. Co.*, 17 Johns. 373; *Mead* v. *Westchester Fire Ins. Co.*, 64 N. Y. 453; *Kilmer* v. *Smith*, 43 Supr. Ct. 461; *Moran* v. *McLarty*, 75 N. Y. 25; *Jackson* v. *Andrews*, 59 id. 244.) The provision in an instrument that the agreement shall, in a certain event, become null and void, always implies that the agreement shall terminate at the option of the party for whose benefit it was intended. (*Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 156; *Hyde* v. *Watts*, 12 M. & W. 254.) The refusal to reassign the patent, upon demand by plaintiff, fixes defendants' liability. (*Marston* v. *Swett*, 66 N. Y. 206; *Hilton* v. *Libby*, 44 Supr. Ct. 12; *Gale* v. *Nauss*, 81 Mass. 300; *Kinsman* v. *Parkhurst*, 18 How. U. S. 385; *Birdsall* v. *Pengo*, 5 Blatchf. 251; *Law* v. *Purser*, 6 El. & Bl. 930; *Jackson* v. *Allen*, 120 Mass. 64.) To maintain their claim that the agreement has become null and void, it was incumbent upon defendants to surrender the patent; they cannot maintain this claim after refusing to reassign the patent on plaintiff's request. (*Johnson* v. *Oppenheim*, 55 N. Y. 290; *Smith* v. *Kerr*, 28 Week. Dig. 184; *Lester* v. *Jewett*, 11 N. Y. 453.) The cancellation of the contract does not counteract its past operations or divest rights already acquired. (1 Smith's Lead. Cas., 1, 166; *Sperry* v. *Miller*, 16 N. Y. 407.)

*W. W. MacFarland* for respondents. The vacating of the judgment entered upon the first trial and the granting of a retrial was a matter resting wholly in the discretion of the

court, and, therefore, not reviewable. (*Hatch* v. *Cent. Nat. Bank*, 78 N. Y. 487.)

Earl, J. The plaintiff instituted this action to recover the amount of royalties claimed to be due from the defendants upon an assignment of a patent. The invention was a folding chair, and the patent therefor was issued June 27, 1876, and the plaintiff assigned the patent to the defendants October seventh of the same year. The assignment was absolute in form and purported to be in consideration of $1,200 and a royalty of seventy-five cents on each chair manufactured under the patent. At the same time the defendants gave to the plaintiff a license to make, use and sell folding chairs under the patent at his shop in the city of New York for the full term of the letters-patent, the defendants agreeing during that time not to sell any chairs made under the patent in the cities of New York and Brooklyn. On the back of the license was written the following agreement:

"We agree to number the chairs in rotation, pay royalty every month, if desired, and show our sales books for the confirmation of the numbers sold. We further agree to pay royalty on not less than six hundred chairs a year, and should we fail in this the agreement shall be null and void."

"Signed by M. & H. SCHRENKEISEN,
"By M. Schrenkeisen."

The defendants went on and manufactured some chairs under the patent and paid the plaintiff the royalties in full for all the chairs manufactured by them. But they did not manufacture 600 chairs a year, and this action was commenced May 13, 1884, to recover royalties upon the claim of the plaintiff that he was entitled to royalties upon not less than 600 chairs each year. The defendants in their answer alleged, in substance, that it was the true agreement between the parties that unless they were able to sell at least 600 chairs a year the invention should be considered a failure and abandoned and the entire agreement between the parties should

terminate and become void; and that it was the intention of the parties to express that agreement in the memorandum indorsed upon the license; and that it was not the intention of either party to thereby express an obligation or agreement on the part of the defendants to make 600 chairs a year or pay the sum of seventy-five cents per chair upon that number of chairs whether they were, in fact, sold or not; and they allege that they had fully accounted to the plaintiff for and paid to him all the royalties upon the number of chairs made and sold by them.

It is unnecessary to notice the curious stages by which, after one trial of the action, the present issues between the parties were reached.

The case was brought to trial at a Special Term of the Superior Court, and the court found, as matter of fact, that at the time of making the agreement for the sale and transfer of the patent, the plaintiff desired that the defendants should become obligated to pay him seventy-five cents a chair on not less than 600 chairs annually; that the defendants refused to agree to that and refused to pay royalty on any more chairs than they manufactured, but offered to agree that if the number did not amount to 600 a year, then, and in that case, the agreement should be entirely null and void; that the plaintiff assented to that agreement, and, in order to express the agreement, the memorandum was written on the license as above set out; that the agreement between the parties, as finally made, was, that the plaintiff should assign to the defendants the patent, receiving $1,200 in cash down and seventy-five cents a chair upon each chair manufactured and sold by the defendants under the patent; and that, unless they were able to manufacture and sell at least 600 chairs a year, then the agreement was to become null and void; that they were not, under any circumstances, to pay the plaintiff more than seventy-five cents a chair upon each chair manufactured and sold by them; that they were to exhibit their sales books to the plaintiff that he might inspect the account of sales, and to number the chairs made and sold by them in rotation, and that the

agreement so made was in all respects performed by the defendants; and he found, as conclusion of law, that the defendants were entitled to judgment that the complaint be dismissed, with costs.

We think the defendants' answer sufficiently alleged the mistake in reducing the agreement of the parties to writing. It was not necessary for them to allege a mutual mistake in the reduction of the agreement to writing, there being no mistake as to the agreement. In such a case, if, by the mistake of the scrivener or by any other inadvertence, the writing does not express the agreement actually made, it may be reformed by the court. It is only where the action is to reform the agreement itself that it is required that it should be alleged in the pleading and proved on the trial that the mistake was mutual. Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected. (*Pitcher* v. *Hennessey*, 48 N. Y. 415.)

We think there was sufficient evidence to show that the agreement as drawn did not express the true agreement previously made between the parties, because by that agreement the defendants were absolutely obligated to pay royalties on not less than 600 chairs per year, whether they manufactured them or not; and it was at the sole option of the plaintiff, in case the defendants were in default in paying royalties upon so many chairs, to declare the agreement null and void.

It is a general rule that when a written instrument provides that it shall become void in case of default by one party to perform some covenant therein contained, it becomes void only upon the claim and at the option of the party for whose benefit the covenant was inserted and who is injured by the default. (*Hyde* v. *Watts*, 12 M. & W. 254; *Rede* v. *Farr*, 6 Maule & Sel. 121; *Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 160.) A case was, therefore, made upon the pleadings, proofs and findings for a reformation of the agreement, so that it should become void in case the defendants

were unable to manufacture and sell at least 600 chairs a year, and obligating them to pay royalties only upon so many chairs as they should manufacture and sell.

But it is claimed that there was no prayer in the defendants' answer to have the agreement reformed, and that is true. The defendants should, by way of counter-claim, have alleged the facts entitling them to a reformation of the agreement, and should have prayed judgment for such reformation, and upon that counter-claim the plaintiff could have taken issue. But this defect in the answer was not mentioned upon the trial, or in any way called to the attention of the court, so far as appears in the record. All the proof was given without objection as if the pleadings were in proper form to justify it, and therefore the objection to the answer must be deemed to have been waived and is not now available to the plaintiff.

It is also objected that the court at the trial term did not order the agreement to be reformed, and that it was not reformed by the judgment. In that respect also we think there is technical error. As the writing stood unreformed the plaintiff was entitled to recover. But as sufficient facts for the reformation of the agreements were alleged, and as the facts found clearly entitled the defendants to a reformation of the agreement, the omission to provide for the reformation must have been by inadvertence. The elements for a reformation all existed in the record, and the judgment may now be so modified as to grant a reformation. It is clear that the case was tried upon the assumption by both parties that if the defendants proved the facts alleged in their answer they were entitled either to a dismissal of the complaint or to a reformation of the written agreement. The controversy was not over forms but over facts.

Our conclusion, therefore, is that the judgment should be modified so as to reform the agreement in accordance with the findings of fact, and the judgment as so modified should be affirmed, without costs to either party upon this appeal.

All concur.

Judgment accordingly.