Order of the general term so far as it modifies the order of the special term reversed, and cause remitted to the general term of the city court for the exercise of its discretion upon the question of terms. No costs. An appeal to the appellate division will be allowed upon the application of any of the parties. All concur.

---

## HEBLER v. BROWN.

(Supreme Court, Trial Term, Franklin County. May, 1896.)

1. COVENANTS OF SEISIN—BREACH.
   A covenant that the grantor was seised of the premises, had good right to convey, and would warrant the title, is not broken by the existence of a lease for 99 years of the mines on the premises, with the option to the lessee to purchase the minerals.
2. REFORMATION OF DEED—MISTAKE OF SCRIVENER.
   A deed may be reformed to correct a mistake of the scrivener.

Action by George F. Hebler against Marshall Brown to recover damages for breach of covenants in a deed. Judgment for defendant.

John P. Kellas, for plaintiff.
John P. Badger, for defendant.

McLAUGHLIN, J. On the 28th day of May, 1891, the defendant executed and delivered to the plaintiff a deed of the premises described in the complaint, and in which he covenanted that he was seised of the premises, had good right to convey, and would warrant the title to the same. It appears that in September, 1889, he executed and delivered to one Meehan & Cowie a lease for a period of 99 years, and by which he "demised, released, and let" to them all

his "right, title, interest, claim, and property * * * to all mines and minerals in veins, mines, quartz, and deposits" on the premises in question, "together with the right of way to and from said minerals, and sufficient land and space around said mines to operate the same, and to erect buildings and machinery for all mining purposes," and for which the said Meehan & Cowie covenanted to pay 15 cents a ton for each and every ton of mineral ores mined, etc., unless they should elect to purchase, which they had a right to do, during the term of the lease, at a consideration of $400. The plaintiff in 1895, fearing that he would lose an opportunity which he then had to sell a portion of the premises, in consequence of this lease, voluntarily, at an expense to himself of $1,200, procured its cancellation and surrender, and brings this action to recover of the defendant the amount which he paid. The defendant, in answer to plaintiff's claim, alleges that, prior to the execution and delivery of the deed to him, it was understood and agreed that the premises were to be conveyed subject to the lease to Meehan & Cowie, and that in addition thereto the defendant reserved the right and privilege of taking water in pipes from a certain spring on the premises, and that these provisions were omitted by reason of a mutual mistake of the parties, and therefore asks that the deed be reformed so that it will conform to the agreement made.

The only covenants in the deed from the defendant to the plaintiff are those above mentioned. The covenant that the defendant was at the time of the conveyance seised of the premises in fee simple, and had good right to convey the same, is nothing more or less than a covenant of seisin. If the defendant was at the time of the conveyance seised of the legal title, then this covenant has not been broken. Such a covenant is a covenant in præsenti, and, if broken at all, is broken the instant it is made. In this respect it is unlike the covenant of warranty, which is necessarily a prospective covenant, a covenant the breach of which can only occur some time after the conveyance is made. The former is a personal covenant, while the latter is one binding upon, and runs with, the premises conveyed. Did, then, the defendant, at the time of the conveyance, have the legal title to the premises? It seems to me, there can be but one answer to this question. An inspection of the lease given to Meehan & Cowie shows that it transferred simply the right to mine, together with an option to purchase. It was an incumbrance, but a covenant of seisin is not a covenant against incumbrances. Laws 1890, c. 475; Whitbeck v. Cook, 15 Johns. 490; Stanard v. Eldridge, 16 Johns. 254; Packer v. Railroad Co., 17 N. Y. 295. It follows, therefore, that the existence of this lease was not a breach of this covenant in the deed. The plaintiff, after acquiring title to the premises, immediately went into possession, and he, or those claiming under him, have ever since been in possession. No rights have been asserted under the lease, and the evidence does not disclose any act either done or threatened under it. How, then, can it be claimed that there has been any breach of the covenant of warranty? In order to constitute a breach of the covenant of warranty, there must be an eviction, either actual or constructive, by a paramount title. Mere lim-

itations or restrictions upon the use of land are not evictions, the title and possession at the time being in the grantee. A covenant of warranty is not a covenant against incumbrances. Laws 1890, c. 475; Boreel v. Lawton, 90 N. Y. 293; Rawle, Cov. 144. The existence, therefore, of this lease, no act being attempted or threatened under it, does not constitute a breach of the covenant of warranty; and, if it did, it might well be doubted whether the plaintiff is in a position to take advantage of it. He voluntarily procured the cancellation of the lease. Non constat, the holders of the lease never would have made any claim based upon, or asserted any rights under, it. For aught that appears, there are no minerals upon the premises. If the holders of the lease never exercised or claimed any rights under it, and there are no minerals upon the premises, how can it be contended that the defendant is liable for what the plaintiff voluntarily paid in order that there might be a perfect record title? The covenant of warranty, as we have already seen, is not a covenant against incumbrances, but is simply a covenant that the grantor will defend the premises; will hold them in the possession of the grantee and persons claiming under him; will take what steps are necessary to legally keep the possession from one claiming in hostility to his grant. If the foregoing conclusions are correct, then it necessarily follows that the plaintiff is not entitled to recover for a breach of the covenants in the deed, unless the deed be reformed, and some additional covenant placed therein. This I do not think should be done. On the contrary, I think the deed should be reformed by making it subject to the lease of Meehan & Cowie, and also by inserting a provision reserving to the defendant the right to take water in pipes from the spring referred to in the answer. As to the defendant's right to take water in pipes from this spring, there does not seem to be any question, according to plaintiff's own evidence. He testified as follows:

"Q. Did he [referring to defendant] say anything to you about reserving his water? A. Yes, sir; he did. Q. What did he say? A. He said, after we made the trade, that he wished to reserve the water, and the privilege, if the pipe froze, to take up the pipe. Q. Was that before the deed was made? A. Yes, sir. Q. What did you do to that? A. I told him I did not care anything about it. I said, 'If you will keep it in repair, and, if you dig up the ditch, you cover it up again. I do not care anything about it.' Q. Then you agreed with his desire to reserve it? A. I did."

It is apparent that the plaintiff himself supposed, until some time thereafter, that such a reservation had been inserted in the deed. It is not only apparent from his evidence, but from the construction which he himself put upon the deed. He sold a portion of the premises to one Durgin, and in the deed to Durgin inserted the following: "Also reserving the right to one Marshall Brown to enter upon the premises for the purpose of repairing the water pipe to run across the said above-described premises." Why should such a reservation be inserted in a deed given by the plaintiff, unless he supposed some right had been reserved by the defendant in his deed to him? I am satisfied, even from the plaintiff's own evidence, that when the minds of the parties met upon the proposition to convey, when the original agreement was made, it was understood and intended by both par-

ties that the conveyance was to be made subject to the right of the defendant to take water in pipes from the spring mentioned, and that such a reservation was to be inserted in the deed, and that it was omitted from the deed by a mistake of both parties. I am also satisfied that it was understood and intended by both parties that the conveyance from the defendant to the plaintiff was to be made subject to the lease in question. It is quite too apparent to my mind, not only from the acts and statements of the plaintiff himself, but also from the conduct of the defendant when he was first approached in reference to it. We therefore have presented a case where there is no mistake as to the agreement itself,—the one upon which the minds of the parties met,—but by a mistake of one or both of the parties, or the scrivener, the deed drawn does not correctly express the agreement made. Under such circumstances, ought not the court reform the deed? I think it should. "In such a case," says Judge Earl (Born v. Schrenkeisen, 110 N. Y. 59, 17 N. E. 339), "if, by the mistake of the scrivener, or by any other inadvertence, the writing does not express the agreement actually made, it may be reformed by the court. It is only where the action is to reform the agreement itself that it is required that it should be alleged in the pleading, and proved on the trial, that the mistake was mutual. Where there is no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."

I think the defendant is entitled to judgment as prayed for in the answer.