BREITUNG et al. v. CALHOUN.

(Supreme Court, Special Term, New York County. March 25, 1916.)

1. MINES AND MINERALS ☞53—CONSTRUCTION OF CONTRACT—OPTIONS—FAILURE TO EXERCISE—EFFECT.

An option to purchase mining properties, providing that, if the purchaser failed to notify the seller on a certain date in writing of his intention to exercise the option, the sum paid should be assumed by the seller giving his notes therefor, no notice of intention not to exercise was required, and the option was defeated automatically on the date named, if there was no notice, regardless of whether it was treated as a bare option or a grant on condition subsequent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 147, 148; Dec. Dig. ☞53.]

2. MINES AND MINERALS ☞53—OPTION CONTRACTS—CONSTRUCTION—LIABILITIES.

Where a holder of an option, being unable to exercise it, assigned it to another, and he, by contract with plaintiffs, arranged for them to make necessary payments, for which he agreed to reimburse them, and thereafter, on failure to exercise, automatically defeating his option, the original holder agreed to reimburse plaintiffs for past and future advances, the relation between plaintiffs and the assignee was immaterial on the issue of the holder's liability on notes given plaintiffs in pursuance of the last agreement; the assignee having been under no obligation to continue the contract.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 147, 148; Dec. Dig. ☞53.]

3. NOVATION ⬤⇒5—WHAT CONSTITUTES—EXISTENCE OF LIABILITY.

Novation cannot be shown where plaintiffs were substituted for the buyer on option sale of mining properties, there having been under the contract no absolute liability on the buyer to proceed, or to make deferred payments.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 5; Dec. Dig. ⬤⇒5.]

4. ASSIGNMENTS ⬤⇒109—LIABILITIES OF PARTIES.

An assignment of an option to purchase mining properties given merely as security does not create a liability against the assignee or his sucessors to perform the contract.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 188; Dec. Dig. ⬤⇒109.]

Action by Edward N. Breitung and others against Patrick Calhoun. On motion to sustain plaintiffs' demurrers to the answer and counterclaim, and for judgment on the pleadings. Motion granted, and demurrer sustained.

Katz & Sommerich, of New York City, for plaintiffs.
James D. Andrews, of New York City, for defendant.

BIJUR, J. This is a motion by plaintiffs to sustain their demurrer to the answer and counterclaim and for judgment upon the pleadings for the relief demanded in the complaint. The complaint seeks to recover from defendant on two promissory notes made by him to the order of plaintiffs of approximately $25,000 and $30,000 each, less certain credits thereon. The defense and counterclaim to which the demurrer has been interposed arises out of the following set of circumstances set forth in the answer:

In July, 1912, defendant made a contract with two mining corporations whereunder he was accorded an option during the succeeding year to purchase the mining properties on certain terms. In June, 1913, the contracts were changed, and the period of the option was extended to 16 months, namely, to October 1, 1913. On September 12, 1913, defendant, pursuant to the terms of the option contracts, notified the mining companies that he elected to exercise his option. On April 28, 1914, defendant and one Gross entered into a contract whereunder the defendant assigned to Gross all his right, title, and interest in and to the mining properties and the option contracts, in consideration of $25,000 paid to him by Gross and of the agreement on the part of Gross to pay to Calhoun on June 20, 1914; the sums due under the option contracts to the mining companies on July 1, 1914, amounting apparently to $37,500. Under the Calhoun-Gross agreement, Gross was required to notify Calhoun on or before August 1, 1914, whether he intended to go forward with the purchase (namely, whether Gross intended to exercise his option), in which event the further terms of payment were specified. The fifth clause of the Calhoun-Gross contract recites:

"If, on or before August 1, 1914, the said Gross does not notify the said Calhoun in writing of his intention to complete the purchase of the interest of the said Calhoun in said mining property, then and in that event the $25,000,

receipt of which is acknowledged by this agreement, the sum paid on installment under attached contract due July 1, 1914, and any additional sum or sums paid by Gross on said option purchase contracts, shall be assumed by Calhoun and repaid to Gross on or before six months from August 1, 1914, and Calhoun shall give his note or notes therefor. As additional *security* for the money paid or advanced, as the case may be, under this contract, said Calhoun has, cotemporaneously with this agreement, executed and delivered a separate assignment"

—it being understood that if Gross did not exercise his option Calhoun shall be entitled, upon repaying Gross all sums advanced, to a cancellation of the assignment. On the same day Calhoun assigned all his right, title, and interest in the mining properties to Gross, "subject to the conditions and provisions" of the foregoing contract. On May 1, 1914, Gross, by agreement with plaintiffs, gave them in substance an option upon his option, carrying out by this agreement a previous understanding between Gross and plaintiffs contained in a letter of April 4th from plaintiffs to him. In this contract between Gross and plaintiffs the consideration paid down by plaintiffs to Gross is recited as $25,000, and there is a provision for plaintiffs' withdrawal on 30 days' notice, and their right to repayment from Gross, in that event, of said $25,000, together with other provisions indicating that it was anticipated that the moneys that might be paid by Gross to Calhoun under his option, if he exercised it, shall really be advanced by plaintiffs; also provisions for the securing of such advances by agreeing to give plaintiffs as a "beneficial interest or participation in said agreement" between said Calhoun and himself, etc. On June 24th the contract was made between plaintiffs and defendant out of which grew the notes sued upon. It recites the various agreements above referred to; also the fact that the report of plaintiffs' engineer does not show the net values in ore alleged to have been represented, and that Gross declines to make any further payments under his contract with defendant; that defendant's contracts (evidently with the mining companies) require installments to be paid on July 1, 1914; that by reason of Gross' default in making such payments "of about $35,000" defendant is seriously embarrassed, and provides that, in consideration of $35,000 by plaintiffs to defendant in hand paid, the defendant waives said default and acknowledges the payment as seasonably made ($35,000) and adds:

"Whereas, plaintiffs propose to withdraw from further participation under said contract immediately upon signing this agreement and to give notice of such withdrawal as provided therein;" that defendant shall make the two notes in suit of $25,000 and $35,000

—and provides that defendant shall give certain security therefor, expressly providing also for the security stipulated to be given by Calhoun to Gross in the Calhoun-Gross contracts. On June 25th, the next day, plaintiffs notified Gross of their payment to defendant of the $35,000, "being the payment required to be made June 20, 1914," and added a notice of their withdrawal from further participation in the option contracts.

Based on this series of transactions, defendant claims that plaintiffs have failed to make any further payments under his contract with the

mining companies, which payments he further claims they were obligated to make under the agreements above referred to on the following theory: First, that at the time of the Calhoun-Gross contract Calhoun had become a purchaser of, and not merely the holder of an option on, the mining property, which claim I think may well be conceded; second, that the Calhoun-Gross contract is more than an option, and is a grant from Calhoun of his interest or title in the mining properties subject to conditions subsequent.

[1] I cannot see that it makes any difference how that agreement can be interpreted in this respect, for under its provisions it is perfectly clear that if, on or before August 1, 1914, Gross failed to notify Calhoun in writing of his intention to complete the purchase, the option accorded to Gross or the grant made to him (whichever it be termed) is defeated automatically, and Calhoun becomes bound to repay the payments or advances theretofore made by Gross. In this respect this contract differs radically from those ordinary forms which provide merely that in case of a default by one party the contract shall become null and void. In that class of cases it has uniformly been held that the meaning of the provision is that the contract shall become null and void only *at the option of the nondefaulting party*. See Born v. Schrenkeisen, 110 N. Y. 55, 59, 17 N. E. 339.

[2] It is further claimed that Gross' covenant to pay the vendors their purchase money is an independent one. Just what the defendant's counsel seeks to imply by this claim I am at a loss to understand. The agreement between Calhoun and Gross seems to me to be perfectly clear to the effect that Gross binds himself to make the payment only of $25,000, receipt of which is therein acknowledged, and of the first installment due under the option contracts, namely, the $37,500, due July 1, 1914, and in consideration of this absolute agreement receives an option, good until August 1, 1914, to purchase the properties on the conditions and further payments therein expressly provided for, with the defeasance clause to which I have just referred. Defendant also claims that Gross was the agent of plaintiffs. As I cannot find that Gross was obligated to make any of the further payments claimed by defendant, I do not see that it makes any difference whether his relation to plaintiffs was that of principal or agent, or of joint adventurer, or of independent contractor.

[3] Defendant's final contention, as I understand it, is that by the Calhoun-Breitung contract of June 24, 1914, plaintiffs expressly assumed the payment of the deferred installments of the purchase money to the original vendors, and that there was a novation substituting plaintiffs in the place of Gross in the Gross-Calhoun contracts. As I have already pointed out that my interpretation of the Gross-Calhoun contract is that Gross did not assume the payment of these "deferred" installments, I cannot say that it makes any difference whether Breitungs were substituted for Gross, nor how they could assume an obligation which Gross himself had not taken.

[4] Connected with this last claim of defendant is one that plaintiffs assumed the obligation to pay these deferred installments by virtue of the "separate assignment" to Gross. This seems to be based

on the alleged principle, generally stated, that the covenant to pay these deferred installments was necessary to uphold the estate conferred, and that the assignment was made "subject to the conditions and provisions of the contract assigned." Among other cases defendant's counsel cites in support of this proposition Burnett v. Lynch, 5 B. & C. 589. I may point out at the outset that in that case the assignment is spoken of expressly as "subject *to the performance* of the covenants." The language in the assignment of Calhoun to Gross is, "subject to the conditions and provisions of the" Calhoun-Gross contract. To my mind it is very plain that this has reference to provisions in that contract which provide for the giving of this assignment and its purpose and limitations. Moreover, as I have repeatedly mentioned, there is nothing in the Calhoun-Gross contract which imposes any obligation on Gross to make the payment of the deferred installments unless he affirmatively elects to proceed with the transaction. Furthermore, the Calhoun-Gross agreement provides in the fifth paragraph, which I have quoted verbatim above, that the assignment is made "as additional security" to Gross, so that whatever effect might by any possibility be attached to an absolute assignment to Gross of Calhoun's contracts or interests in respect of the real estate, no such effect can be predicated inter partes upon an assignment made merely by way of security.

In addition to all these considerations, the final contract between plaintiffs and defendant amounts clearly to an assent by defendant to plaintiffs' withdrawal from the whole transaction in consideration of their advancing to defendant the $35,000 which he needed to carry out his agreement with the mining companies. It is true that there are phrases in this agreement from which it might be argued with some plausibility that the parties had in mind some obligation continuing or otherwise of plaintiffs in respect of these option agreements, although I am quite clear that these phrases are mere inexact expressions referring to plaintiffs' undertaking in the contract itself to advance the $35,000; but in any event, and taking them at the most favorable interpretation which defendant may put upon such vague hints, the express provisions of the contract in regard to the plaintiffs' withdrawal overcome any doubt which these possibly ambiguous phrases might raise. In my opinion the plaintiffs never undertook any obligation at all *toward defendant* in respect of this entire transaction. Again, if they did, it was no obligation beyond the payment of the installment due by defendant July 1, 1914, to the vendors of the mining property, unless either they or Gross expressly elected to proceed further with the purchase, which they did not do. And, finally, however that may be, the agreement of June 24, 1914, between plaintiffs and defendant not only set at rest any doubts concerning the mutual obligations, but amounts to a final and complete adjustment of their relation on the terms therein expressed, resulting in the sole obligation of defendant to plaintiffs upon which the present suit is brought.

Motion granted. Demurrer sustained.