In the Matter of the Estate of ROSALIE BACON, Deceased.

Surrogate's Court, Westchester County, November 26, 1937.

*Alexander & Green*, for Anna F. Bacon.

SHEILS, S. The decedent and her sister, this petitioner, resided at 60 Kensington road in the village of Bronxville. In or about the month of October, 1934, they employed a well-known firm of attorneys in New York city to draw their wills, each giving all of her property to the other and making provision for a gift over in the event that either one died before the other. The wills were drawn as directed and mailed to them for execution. Soon after the wills were received, Rosalie handed her will to Anna to read and Anna handed her will to Rosalie to read.

Anna F. Bacon testified to this fact in the following manner: " My sister and I read the two wills — each read the other's will. I said ' You read mine and I will read yours so that we know they are similar ' and then my sister took it and we spread them out on two tables in the living room and when Mr. and Mrs. Gage and Mrs. Wilson [the three witnesses thereto] came in, they were ready to sign and through my stupidity — I will take the blame — we did not exchange and we did not say ' this is yours and this is mine.' After they were signed I did not look at them and put them in the safe. By Mr. Clark: Q. If I understand you correctly, your testimony is to the effect that when the wills came in you handed the will prepared by them for you to your sister, and the will prepared for her to sign was held by you? A. I had them from the mail. We took the two wills and sat together and I read it aloud. Then we laid them on the table; we could not have changed so that each one of us had her own. We laid them open on the table and when Mr. and Mrs. Gage and Mrs. Wilson came they were ready to sign. Q. Would you say now you did not afterwards exchange wills so that you had your will and your sister had hers? A. It must have been. At the head is the only place where the name appears. I was signing mine on every page and told my sister to do the same — so she did. When we were finished I took them and folded them and took them to the safe deposit."

The witness further testified that she gave her attorney the necessary information to be used in drawing the two wills; that her sister was not very strong or well and that she had directed the witness to tell the attorney that she wished to make an identical or duplicate will to the one that Anna was making. An arrangement was made that, after the wills were drawn they were to be mailed to them for execution and he gave them instructions as to how they were to be executed. Anna F. Bacon gave further testimony as follows: " Q. When the wills came in by mail who opened the envelope? A. I did, it was addressed to me. Q. In the envelope you found these two papers? A. Yes, those are the two [referring to two paper writings bearing date October 10, 1934 — one purporting to be the will of Anna F. Bacon and the other that of Rosalie Bacon]. Q. When you opened the envelope you took out the two originals and two copies and handed one original, the one you were to sign to your sister and retained the one she was to sign? A. Yes, to read them. Q. Your best recollection is you never exchanged them again before signing? A. That is my best recollection. Q. You had her will and laid it on the table and she had yours and laid it on the table and you did not attempt to get your own will back? A. We turned them over. Q. As a matter of fact the only way to identify these two instruments was by the name in the first clause? A. Right. Q. Otherwise the papers are identical? A. Yes. Q. That is your best recollection of what happened? A. Yes. Q. Who asked the witnesses to come in? A. I telephoned Mrs. Gage and asked them to come over and Mrs. Wilson. I told them it was to witness our wills."

Both instruments were signed by the same witnesses, Louise P. Wilson, Janette W. M. Gage and Carl W. Gage. Two of the witnesses testified. They said that when they came into the room the two instruments were lying on a large table which stood against the wall in the living room. The papers were laid open on the table ready for signature. One of the papers was signed by Miss Rosalie and the other by Miss Anna. Each declared the paper so signed by her to be her will, after which the witnesses signed and soon after departed. The witnesses testified that they did not read the two papers signed by them. Each paper writing consists of five typewritten pages and was executed on October 10, 1934. Soon after their execution, the two wills were placed in a safe deposit box and not again examined until after the death of Rosalie Bacon on July 13, 1937, when it was discovered that each had signed the wrong will. Anna F. Bacon has presented a petition asking that the will be denied probate upon the ground that it was invalidly executed.

The facts here are analogous to those in *Matter of Nelson* v. *McDonald* (61 Hun, 406). In that case, John Nelson and Jane Nelson, husband and wife, employed one Cowie to draw their wills, each giving all his or her property to the other. The wills were drawn at the house of the parties and read to them. They were then laid upon the table for them to sign and each signed one of the wills. Each was then asked if the paper signed by him or her was his or her last will and testament. Each said it was and then each asked the subscribing witnesses to sign the paper executed by him or her as such, which they did. The wills were then placed in an envelope which was sealed until after the death of John Nelson, which occurred in the following year. After his death, the envelope containing the wills was opened and it was then for the first time discovered that each had signed the will intended for the other. The wife brought an action to reform the will signed by the husband. The Supreme Court dismissed the complaint, with costs. Upon appeal, the appellate court, in affirming the judgment of the lower court said, among other things:

" In this case the plaintiff and her husband each intended to make a will. They were alike, *mutatus mutandis*. By mistake, each signed the one prepared for the other. It is manifest that the decedent never intended to execute the will signed by him. None of the provisions contained in it expressed his intended disposition of his property. The will he intended to make was that signed by his wife. We are unable to perceive how it can be properly said that he executed his will. The evidence shows conclusively that he did not. It was his wife's will that he executed. He intended to make a will, but by mistake that intent was frustrated. Suppose, instead of signing the will of his wife, he had, through a similar mistake, signed a deed or a blank piece of paper, is it possible that the court could when satisfied that he intended to make a will containing certain ascertained provisions, transform such deed or blank paper into the will he intended to make? If not, how does this case differ? In either case, the will he intended to make was not executed by him. If the court would be authorized to alter the paper he signed in this case, so as to make it the will that he intended, why might it not as well so change the deed as to make it his will, or write his will upon the blank paper signed by him?

" To avoid confusion we should keep in mind the fact that the question here is not what construction should be placed upon a paper executed by the decedent, and intended as his last will and testament. The fundamental error in this case was not in the employment in his will of language that was ambiguous, uncertain

or which did not correctly express the decedent's intention. It lies in the fact that the paper sought to be established as his will was never intended by him as such. His intention was to make another will which he had prepared but not executed. Therefore, the single question is whether the decedent left a will."

Upon the facts shown, I am of the opinion that the will offered here is null and void and that the decedent died intestate.

Decreed accordingly. Submit order.