■ LEWIS G. COLLINS, Respondent, v. PECKHAM ROAD CORPORATION et al., Appellants.— Appeal from a judgment of the Supreme Court, Washington County, after trial without jury, in the amount of $19,322.34 plus costs. In July of 1958, the Peckham Road Corporation was awarded a contract by the State of New York to reconstruct a State highway in Columbia County. The nub of the present litigation centers on who is to bear the cost of $11,781.90 worth of materials purchased by respondent and incorporated in the work. The pertinent portion of the contract was a typewritten note which, after providing that all cement, concrete, aggregate and grout would be furnished by "others", states: "All other materials to be provided by the *Contractor*." (Emphasis added.) A prior mimeographed provision in the contract stated: "The Subcontractor agrees to furnish all materials and perform all labor necessary". Peckham urges that instead of "contractor" in the typewritten note the term intended was "subcontractor", and that the contract should be reformed to rectify this "scrivener's error" citing *Born* v. *Schrenkeisen* (110 N. Y. 55). The court below found that although a mistake had indeed been made when Peckham prepared the contract, respondent was unaware of the error and had relied on the belief that Peckham was to furnish the material. Then noting that under the rules of construction ambiguities are strictly construed against the party preparing the contract, the court below held that reformation was not available since the mistake was unilateral and there was no evidence of fraud on the part of respondent. On examining the contract here involved it is apparent that there is present not only a contradiction between the mimeographed and typewritten portions of the document but also a superfluousness in the typewritten portion. If it was intended that respondent was not to bear the responsibility of providing any of the materials, why was not a direct statement to this effect utilized instead of first stating specifically that the cement, etc., was not to be furnished by respondent and then adding that the "contractor", Peckham, was required to furnish "all other materials"? Since the contract is all but completed as to the items involved in this litigation, we are not limited in resolving the question of the intent of the contracting parties to the normal tools of construction which we would have to utilize if

the contract were wholly executory, but can avail ourselves additionally of the construction given to the contract by the parties themselves as manifested by their conduct (10 N. Y. Jur., Contracts, § 221, p. 135; e.g., *Sinkwich* v. *Drew & Co.*, 9 A D 2d 42). We cannot agree with the finding of the court below that respondent understood that the agreement between the parties required Peckham to provide the materials in question. Respondent's entire course of conduct with respect to his obligations under the contract belies such an understanding. His purchasing and billing procedures indicate a clear division in approach toward the concrete, etc., admittedly being furnished by Peckham, and the materials in dispute. As work progressed, respondent submitted bills for the concrete directly to Peckham but no bill was ever sent for the disputed items until at least nine months after the work commenced and five months after respondent had paid for the last of the reinforcing bars, the major item involved. Further all of the materials in question were ordered without any consultation with Peckham who was allegedly to pay for them. In addition respondent sought and received from the State a "winter payment" of 85% of the cost of 31,709 pounds of reinforcing bars. This action is, of course, inconsistent with respondent's contention that he interpreted the contract to require Peckham to be responsible for the cost of the reinforcing bars. Respondent's explanation that he was treating these materials as a "bank" is not impressive. Beyond the obvious fact that if he had deposited the money in a bank he would have received interest on his deposit, there is no evidence that such a "banking" procedure was customary in the trade. Viewing the record as a whole we find that it was the intention of the parties that respondent provide the materials in question and reformation should have been granted (see *Nash* v. *Kornblum*, 12 N Y 2d 42). We cannot, however, agree with Peckham's contention that the penalty provision of section 39-a of the Lien Law should be invoked against respondent. This section is penal and thus is to be strictly construed (*Durand Realty Co.* v. *Stolman*, 197 Misc. 208, affd. 280 App. Div. 758). Section 39-a must be read in conjunction with section 39 of the Lien Law which requires a "wilful" exaggeration. We construe "wilful" to mean intentional and deliberate (see *Reetz, Inc.* v. *Stackler*, 24 Misc 2d 291, 296). Because we have held for Peckham with respect to the interpretation of the contract does not *ipso facto* brand respondent's claim as a "wilful exaggeration." On the present record we cannot characterize respondent's claim as fictitious or fraudulent. Judgment modified on the law and the facts by reducing the amount of the recovery to $7,540.44 with interest and costs to plaintiff in the court below; and as so modified, affirmed, with costs on the appeal to appellant Peckham Road Corporation. Bergan, P. J., Coon, Gibson, Reynolds and Taylor, JJ., concur.