OPINION OF THE COURT
George W. Marthen, S.
This court is called upon to determine whether the instrument filed with the court is the last will and testament of the decedent and whether it should be admitted to probate.
The hearing held by the court without a jury disclosed the following: the decedent, together with his wife, consulted an attorney with respect to drawing of a will for each of them. After discussing the details of the testamentary dispositions desired by each and determining that the intention of each was to leave the entire estate to whichever should survive and, in the event that they should die together or that the survivor should die without making a new will, the entire estate should pass to their children, and further, that each should be the executor of the will of the other, the two wills were prepared by the attorney. Subsequently the attorney, and the decedent and his wife attended at the home of those who signed the will as witnesses. While gathered around the table in such home with all of those just mentioned being *514 present, the decedent declared that the instrument he was about to sign was his last will and testament and asked the persons present as witnesses to witness his execution of same. The attorney then removed an instrument from a will envelope bearing the name "Harvey Snide” and, after turning up the first page of the will to expose the line upon which the decedent was to affix his signature, directed the decedent’s attention to the proper place for execution and the decedent affixed his signature thereto. Following this the witnesses affixed their signatures, at the testator’s request, in the appropriate places beneath the attestation clause. After this was completed, the identical procedure occurred with respect to the instrument signed by the decedent’s wife. Through inadvertence, any by reason of the failure of the attorney/scrivener to examine the instrument removed from the envelope, the decedent affixed his signature to the instrument which had been prepared for execution by his wife and his wife, for the same reason, affixed her signature to the instrument which had been prepared for execution by the decedent. Except for the names of decedent and his wife, the instruments are identical!
The decedent is survived by his widow and three children, two of whom have reached their majority and one being, at the time of the hearing, 12 years of age. The two older children have executed waivers and consent to the "will” being admitted to probate.
The guardian ad litem appointed by the court to represent the interests of the infant, relying upon Matter of Egner (112 NYS2d 568); Matter of Cutler (58 NYS2d 604); Matter of Bacon (165 Misc 259); and Nelson v McDonald (61 Hun 406), objects to the probate of the propounded instrument on the grounds that strict compliance with EPTL 3-2.1 is required, that the instrument propounded does not meet such requirements and that this court is without equitable powers of reformation in the circumstances here presented.
This court has been unable to discover any cases directly in point, other than those cited above, nor have any others been discovered by either the attorney for the proponent or the guardian ad litem. The most recent of such cases, Matter of Egner (supra), was decided on May 16, 1952. This then, at least as far as reported cases are concerned, appears to be a matter of first impression since the 1966 amendments to *515 SCPA 201 granted to this court the power "to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires”. (Italics added.)
Such language is fully bolstered by the declaration of legislative intent found in subdivision 2 of such section that its grant of jurisdiction "shall in all instances be deemed to include and confer upon the court full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred.” (Italics added.) Any doubt as to the scope of this court’s equitable powers having now been dispelled, as so succinctly stated in the Practice Commentary to SCPA 201 by Professor David D. Siegel (McKinney’s Cons Laws of NY, Book 58A, SCPA): "With the adoption of article six of the state constitution effective September 1, 1962, the last vestige of constitutional barrier to the conferring of equity jurisdiction upon the surrogate’s court was removed. Section 12(e) of article six appears to cede to the legislature the full say as to what equity jurisdiction the court is to have. The legislature has exercised this broad power in subdivision two of § 201”, this court accepts such grant of full equity jurisdiction without limitation in matters properly before it.
A classical example of the judicial exercise of equitable powers is, to put it simply, the correction of obvious mistakes. While it is true that the vast body of legal decisions available on the subject of reformation of instruments deals with the correlative rights of two or more parties and the misstatement of such rights, after agreement, and at variance therewith, in the instrument actually executed (see for instance 6 NY Jur, Cancellation and Reformation of Instruments, Part II), the court sees no reason to reject such equitable powers where, as here, unilateral execution only of the instrument is required. It might even be said that the decedent "contracted” with the Surrogate, as his representative, to see that his estate is disposed of according to his wishes. It would indeed be a harsh result, and perhaps a complete abandonment of appropriate principles of logic and justice, to deny the decedent his final wish and by strict application of statute in total disregard of a mistake so obvious that, were it to have occurred under *516 contractual circumstances, equity would intervene to set the matter right, to thwart his obvious intention.
The Court of Appeals in Born v Schrenkeisen (110 NY 55, 59) in ruling upon a scrivener’s mistake in reducing an agreement to writing, and where the mistake was unilateral, stated, "In such a case, if, by the mistake of the scrivener or by any other inadvertance, the writing does not express the agreement actually made, it may be reformed by the court”.
More recently, in ruling upon the same issue, the Court of Appeals reaffirmed its position in Harris v Uhlendorf (24 NY2d 463, 467), " 'Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected’.”
This court sees no reason to apply different equitable rules to the circumstances at hand and thus grants the application of the proponent for reformation of the instrument propounded as the last will and testament of Harvey Snide, and executed by him on the 13th day of August, 1970, to the extent that wherever the name "Rose” shall appear, the name "Harvey” shall be deemed substituted therefor; wherever the name "Harvey” appears, the name "Rose” shall be deemed substituted therefor and wherever the word "husband” shall appear, the word "wife” shall be deemed substituted therefor.
The court also finds tht the instrument was properly executed and witnessed, that the decedent was possessed of testamentary capacity and under no restraint or disability.
The instrument propounded as the last will and testament of Harvey Snide, as reformed pursuant hereto, will be admitted to probate upon exeuction by this court of an appropriate decree.