Jones, J.
(dissenting). I agree with the Appellate Division that the Surrogate’s Court had no authority to reform the decedent’s will and am of the conviction that the willingness of the majority in an appealing case to depart from what has been consistent precedent in the courts of the United States and England will prove troublesome in the future. This is indeed an instance of the old adage that hard cases make bad law.
Our analysis must start with the recognition that any statute of wills (now articulated in this State at EPTL 3-2.1) operates frequently to frustrate the identifiable dis-positive intentions of the decedent. It is never sufficient under our law that the decedent’s wishes be clearly established; our statute, like those of most other common-law jurisdictions, mandates with but a few specific exceptions that the wishes of the decedent be memorialized with prescribed formality. The statutes historically have been designed for the protection of testators, particularly against fraudulent changes in or additions to wills. “[W]hile often it may happen that a will truly expressing the intention of the testator is denied probate for failure of proper execution, it is better that this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions in *198 tended to protect testators generally from fraudulent alterations of their wills” (64 NY Jur, Wills, § 198, p 348).
Next it must be recognized that what is admitted to probate is a paper writing, a single integrated instrument (codicils are considered integral components of the decedent’s “will”). We are not concerned on admission to probate with the substantive content of the will; our attention must be focused on the paper writing itself. As to that, there can be no doubt whatsoever that Harvey Snide did not intend as his will the only document that he signed on August 13, 1970.
Until the ruling of the Surrogate of Hamilton County in this case, the application of these principles in the past had uniformly been held in our courts to preclude the admission to probate of a paper writing that the decedent unquestionably intended to execute when he and another were making mutual wills but where, through unmistakable inadvertence, each signed the will drawn for the other. Nor had our courts blinkingly invoked a doctrine of equitable reformation to reach the same end. (Nelson v McDonald, 61 Hun 406; Matter of Bacon, 165 Misc 259; Matter of Egner, 112 NYS2d 568; Matter of Cutler, 58 NYS2d 604; subsequently, contra Matter of Iovino, NYLJ, April 16, 1980, p 14, col 5 [an uncontested case].)
On the basis of commendably thorough world-wide research, counsel for appellant has uncovered a total of 17 available reported cases involving mutual wills mistakenly signed by the wrong testator. Six cases arise in New York, two in Pennsylvania, three in England, one in New Zealand and five in Canada. With the exception of the two recent Surrogate’s decisions (Snide and Iovino) relief was denied in the cases from New York, Pennsylvania and England. The courts that have applied the traditional doctrines have not hesitated, however, to express regret at judicial inability to remedy the evident blunder. Relief was granted in the six cases from the British Commonwealth. In these cases it appears that the court has been moved by the transparency of the obvious error and the egregious frustration of undisputed intention which would ensue from failure to correct that error.
*199 Under doctrines both of judicial responsibility not to allow the prospect of unfortunate consequence in an individual case to twist the application of unquestioned substantive legal principle and of stare decisis, I perceive no jurisprudential justification to reach out for the disposition adopted by the majority. Not only do I find a lack of rigorous judicial reasoning in this result; more important, I fear an inability to contain the logical consequences of this decision in the future. Thus, why should the result be any different where, although the two wills are markedly different in content, it is equally clear that there has been an erroneous contemporaneous cross-signing by the two would-be testators, or where the scrivener has prepared several drafts for a single client and it is established beyond all doubt that the wrong draft has been mistakenly signed? Nor need imagination stop there.
For the reasons stated, I would adhere to the precedents, and affirm the order of the Appellate Division.
Judges Jasen, Fuchsberg and Meyer concur with Judge Wachtler; Judge Jones dissents and votes to affirm in a separate opinion in which Chief Judge Cooke and Judge Gabrielli concur.
Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and the matter remitted to the Appellate Division, Third Department, for further procedings in accordance with the opinion herein.