**Titan Constr. Servs., LLC v Board of Mgrs. of PS 90 Condominium**

2025 NY Slip Op 32286(U)

June 23, 2025

Supreme Court, New York County

Docket Number: Index No. 652243/2021

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   HON. MELISSA A. CRANE          PART _____ 60M _____

*Justice*

-------------------------------------------------------------------X

TITAN CONSTRUCTION SERVICES, LLC

                            Plaintiff,

- v -

BOARD OF MANAGERS OF PS 90 CONDOMINIUM D/B/A
PS90 CONDOMINIUM ASSOCIATION,

                            Defendant.

-------------------------------------------------------------------X

INDEX NO.    652243/2021

**Decision After Bench Trial**

Melissa A. Crane, JSC

This case concerns a construction project. On September 29, 2023, this court denied summary judgment to plaintiff, Titan, finding issues of fact about whether there was a mutual mistake and, if so, whether plaintiff should receive $2.06 a square **inch** for its terra cotta work, as defendant contends, or whether it should receive what plaintiff would consider a reasonable price. Thus, the main issue for trial was: (1) whether the parties agreed to a particular price, and, (2) if not, what a reasonable price would be. There are also issues concerning other work Titan performed on the site. Defendant contends that the parties agreed to $2.06 per square inch and that price is reasonable. Plaintiff contends that the parties did not agree to that price which plaintiff postures is unreasonably low. The following is the court's decision after a bench trial.

## I.   The Price for the TRC 02 Work

On July 11, 2016, plaintiff Titan and defendant PS90, the property owner, entered into a contract for Titan to perform work on PS90's condominium building (Ex. C) Part of the work was for "TRC 02" repair, a type of repair to terra cotta (id at § 3.2.3). At § 6.1.5, the contract

# OTHER ORDER – NON-MOTION

lists as an "Addenda" a certain "Revised Bid Form" signed APRIL 13, 2016. Plaintiff attached that bid form to the contract. It reads **$285.00** per square <u>inch</u> as the unit price for the TRC 02 Terra Cotta Spall Repair (id at bates stamp 000053; see also Ex E at 000063).

It is clear there was a mistake on that April bid form and that plaintiff meant to bid $285/sq foot in that April bid. Although plaintiff claims in its post-trial brief that "There is no evidence of a mutual mistake in the within action," this contradicts plaintiff's position elsewhere, including, strangely, in the same post trial brief (see EDOC 115 pg. 2 "TITAN does not dispute that the intended result was not what the parties' contract specifically contemplated"). The position Plaintiff's counsel took on the record at trial also confirmed the presence of a mutual mistake. At trial plaintiff's counsel conceded that "There was a bid submission of $2.06 that was changed later that day to $285 a square inch. In our view it should have been $285 a square foot, not a square inch." (Trial Transcript (TT) 106-107). Moreover, this on-the-record admission was in keeping with plaintiff's position throughout the case. In its <u>pretrial</u> statement, plaintiff again admitted that:

> "TITAN does not dispute that the intended result was not what the parties' contract specifically contemplated. That is because the quantity should have been square feet by location, not the number of square inches multiplied by $285.00 per square inch, which is what the contract actually states."

(EDOC 108 pg. 2) Having conceded the existence of a mutual mistake in the contract previously, plaintiff cannot now take a contrary position. Thus, it would appear no party disputes that it was a mistake to append the April bid form containing the bid of $285 per square inch to the contract.

Plaintiff does not argue that a court will reform the instrument to do what is reasonable in the face of evidence of actual intent. Rather, PLAINTIFF ADMITS that "Where a written instrument fails to conform to the intended agreement between the parties whether caused by the

[* 2]

mutual mistake of the parties, however induced, or of the mistake of one party and fraud of the other, or for some other reason a court will reform the instrument **so as to make it conform to the __actual agreement__ between the parties**" (Pl Post Trial Br. [EDOC 115] at pg 17). This position comports with the law. "Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." (*Nash v. Kornblum,* 12 N.Y.2d 42, 47 [1962] (quoting *Born v. Schrenkeisen*, 110 N.Y. 55, 59 [1888]).

Unfortunately for plaintiff, the evidence shows that the parties had meant to agree to $2.06 a square inch. First, there is the May 16, 2016 bid submission (Ex F at 000072). This Bid Submission, which **post** dates the April bid submission, and is Titan's final bid, lists a square inch price of $2.06 for the TRC 02 work (*id.* at 000072). Moreover, an email from Eric Mercado at Titan to Mathew Cronin, dated May 17, 2016 (Ex 00), reflects that the May bid submission was sent and included a change for TRC 02 work to "Square inch." It was after the final May bid submission that defendant awarded the contract to Titan.

It was Titan who assembled the contract (see Testimony of Mr. Garcia (Titan) at pg 40: "And in terms of putting together the paper documents with the signatures and the final version, someone at Titan did that, right, and sent the whole thing back to SuperStructures? A: Yes." Therefore, it is highly likely that someone at Titan incorrectly attached the April bid document to the contract containing $285 per square inch, when they were supposed to have attached the May bid document containing $2.06 per square inch.

There is more. The field reports, upon which Titan was always cc'd, all list the TRC O2 work in square inches at $2.06 per Unit Price (see Ex OOO spreadsheet at bates no 001660, 001691, and 001710). Titan's own exhibit ZZZ (Field Report 13) also lists $2.06 for TRC 02

work. There is nothing in the record to suggest that Titan challenged this designation. In fact, Titan submitted payment applications and accepted payment at $2.06 per square inch for the terra cotta work. Joint Exhibit JJJ is an application and certificate for payment. At the point JJJ was created, 100% of the <u>original</u> work was complete and Titan accepted $1,710 for approximately 832 square inches of work. Mathematically, this works out, rounded up by half a cent, to $2.06 a square inch, just like the May bid called for. During the trial, in relation to Ex JJJ, Mr. Garcia from Titan admitted that Titan billed $1,710 for approximately 832 inches of TRC 02 work (See Ex JJJ at 001526 and TT 67-68). Thus, for the original scope of work Titan charged and was paid at the rate of $2.06 for TRC 02 work.

At some subsequent point, the project expanded to an additional 50,026 square inches of TRC 02 work. Mr. Garcia admitted that the bid unit pricing meant that the contractor would perform additional work at the same unit price **(TT 71)**. Nevertheless, Titan interposed a change order that asked for $14 million dollars for the 50,026 square inches of additional work (see Ex FFFF). Mr. Garcia admitted this request for $14M was based on $285 a square inch, a number plaintiff has conceded was NOT what the parties had agreed to.

Plaintiff had apparently balked at the large amount of additional work, finding it financially infeasible at $2.06/sq inch (see Ex GGG entitled "Response to AG&A letter dated February 20th, 2019"):

> "Furthermore, based on the project drawings and specifications, in addition to the insignificant base bid quantity of TRC 02, the detailed work to performed TRC 02 at $2.06 per square inch is absurd based on Industry cost. To execute and complete a typical square inch TRC 02 repair it would take a minimum 4 days excluding materials limitation to weather as per project documents guidelines. The difference to replace 1SF vs. 1SI is a material cost only, as labor tools remain unchanged."

However, Titan does not explain why this circumstance enabled Titan to raise its unit price when, as Mr. Garcia admitted, the original bid price was supposed to carry through to additional work (TT 71). In addition. the increase in square inches should not matter. Titan was being paid for the amount of work, not a flat fee. More square inches meant more money. If Titan underbid the project, that circumstance is irrelevant to its contractual obligations.

Neither side briefed the standard of proof to demonstrate what a proponent of reformation needs to adhere to after both sides agree that the contract contains a mutual mistake of fact, but disagree about what the parties' actual agreement was. Hence, in an abundance of caution, the court will apply a clear and convincing standard of proof (see *Empery Asset Master Ltd, v Ait Therapeutics, Inc.*, 215 AD3d 10, 14-15 [1st Dep't 2023] [affirming decision after bench trial that investors had established a mutual mistake in omitting anti-dilution provisions]).

The pattern jury instructions (PJI 1:64) describe clear and convincing evidence:

> it is not enough to find that the preponderance of the evidence is in the plaintiff's favor. A party who must prove (his, her) case by a preponderance of the evidence only need satisfy you that the evidence supporting (his, her) case more nearly represents what actually happened than the evidence which is opposed to it. But a party who must establish (his, her) case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what (he, she) claims is what actually happened.

Applying that standard here, it is highly probable that the parties meant to agree to a unit price of $2.06. As discussed, plaintiff has conceded that the unit price of $285/sq inch in the bid document attached to the parties' contract was a mistake. The remaining evidence supports that Titan bid, and defendant accepted, a unit price of $2.06. This evidence includes, as discussed supra: Titan's final May bid containing a $2.06 unit price for TRC 02 work, the testimony at trial, the field reports, Titan's invoices and its acceptance of payment at the rate of $2.06/inch.

[* 5]

There is also Mr. Garcia's testimony that the accepted bid unit price was supposed to apply to additional work.

Meanwhile, plaintiffs' assertions about the correct unit price are a moving target. First, Mr. Garcia testified that Titan intended to bid $285 per square inch (TT46) This contradicts Plaintiff's own counsel who said: "In our view it should have been $285 per square foot, not a square inch" (TT 106). However, $285 per square foot also makes no sense for plaintiff as $285 per square foot divides down to $1.98 per square inch, an amount that is even less than the $2.06 plaintiff rejects. Going the other way, 50,026 square inches is 347 square feet. At $285 a square foot, plaintiff would only be owed $98,895.00.

Even if Mr. Garcia's testimony, that Titan intended to bid $285 per square inch, did not contradict plaintiff's position throughout this litigation, his testimony is not credible. In defendant's exhibit 2, an April 17, 2019 email from Mr. Garcia, he claims yet a different amount. He asserts there was now a "clerical error" on the <u>May</u> bid form "changing it from $<u>206.00</u> to $<u>2.06</u>" per square inch. What happened to the $285 per square inch? Which is it?

Then, there is plaintiff's expert's calculations. Plaintiff's expert developed a formula, apparently for this litigation, to calculate linear flat and decorative patch work. His report calculated a range from $700,000 to $900,000. This in itself is a moving target. The constantly changing and contrived nature of plaintiff's supposed unit price does not reflect well on its credibility.

Thus, defendant has carried its burden by clear and convincing evidence to show that the parties <u>actually</u> intended to agree to $2.06 per square inch for the TRC 02 work. Because the evidence shows what the parties <u>actually</u> agreed to, the court does not need to reach plaintiff's expert and what he, or anyone else, considered to be reasonable.

II.     Titan's Allegedly Incomplete and Defective Work

Defendant contends that Titan failed to: (1) fix damages metal panels, (2) properly reconstruct the parapet walls that led to water intrusion, (3) repair and replace metal pavers and (4) repair damage to a door.

A. The parapet wall

Defendant failed to carry its burden to show that Titan was responsible for the defects in the construction of the parapet wall. Titan objected to the design, but built it to the specifications that SSX gave it. Titan did what it was instructed to do. If the design was poor, that is not Titan's fault. Further, all relevant entities, including the Department of Buildings, signed off on the wall and Titan was paid for that work. Defendant terminated Titan on July 23, 2019. The only reasons given in the termination letter (see Joint Ex. P), were (1) "failure to supply enough properly skilled workers and proper materials" and (2) it's having issued change orders with "Wholly unsubstantiated and commercially unreasonable" unit prices. There is no mention of the wall. Finally, Mr. Galetta is not a neutral witness. SSX is his company and probably responsible for the faulty design.

B. The remaining defects:

Titan appears to concede some of defendant's remaining grievances constitute defective work. This is because on page 21 of its post-trial brief, it issues "Credits for defective work for which evidence was presented." These total $34,415.00 and involve: (1) the panels to be replaced, (2) coating on the meal doorframes, (3) drywall repair, (4) painting and (5) pavers.

Aside from the work underlying these credits, there is no evidence that plaintiff owes defendant anything for other work. In Joint exhibit LL, Defendant lists additional work, some of which it failed to discuss in the post trial brief, to claim that Titan owes it $425,028.00.

However, there is no support in the record for most of the remaining entries and some are highly suspicious. For instance, the largest bulk amount of the $425,028.00 is "SSX Services (to date) $180,478" (see Ex LL). No where in Mr. Galetta's direct trial affidavit (see EDOC 110) does he explain why SSX needed to charge $180,478 due to Titan's allegedly defective work. The lack of explanation is compounded by the self-serving nature of the testimony as SSX is Galetta's own company. There is utterly no explanation as to what New Bedford Management Services did to earn $59,884 and why Titan should pay for it. Rather, the $425,028.00 seems to be a last minute contrivance to lessen the blow should defendant have lost on the TRC 02 issue.

By defendant's own calculations, it still owes Titan $93,800.04 (**see Ex LLL**) for the TRC 02 work. With the credit of $34,415.00 for Titan's defective work, defendant still owes $59,385.04. As Titan has not proved its case with respect to the unit price, and defendant has largely failed to prove its counterclaims, neither party can be considered the prevailing party for purposes of the attorney fee provision of the contract. Therefore, all requests for attorney's fees are denied.

The court has considered the remaining contentions of both parties and finds them unavailing. Accordingly, it is

ORDERED THAT the clerk enter judgment in the amount of $59,385.04 with pre judgment interest from July 15, 2019, the date Titan was terminated, in favor of Titan Construction Services and against Board of Managers of PS 90 Condominium; and it is further

ADJUDGED, DECREED AND DECLARED that there was a mutual mistake in the parties' contract concerning the unit pricing for TRC 02 work; and it is further

ADJUDGED, DECREED AND DECLARED that the Parties agreed that Titan would perform the additional TRC 02 Work at a unit cost of $2.06 per square inch; and it is further

ORDERED THAT there shall be no motion practice whatsoever without prior conference with the court, briefs that fail to contain a table of contents and table of authorities will be rejected.

| 6/23/2025 | | |
|---|---|---|
| **DATE** | | **MELISSA A. CRANE, J.S.C.** |

CHECK ONE:

| | | |
|---|---|---|
| [x] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION |
| [ ] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |