Kenneth SUSMAN, d.b.a. S.A.G.E. Liquor Concession, et al., Plaintiffs,

v.

SOUTH TEXAS PACKAGE STORES ASSOCIATION et al., Defendants.

Civ. A. No. 13348.

United States District Court
S. D. Texas,
Houston Division.

Aug. 15, 1963.

Joseph L. Nellis, Washington, D. C., and William E. Ladin, James G. Cowen and Herbert N. Lackshin, Houston, Tex., for plaintiffs.

Vinson, Elkins, Weems & Searls, Leroy Jeffers and J. M. Hopper, Houston, Tex., for defendants McKesson & Robbins, Inc. and James E. Mills.

Andrews, Kurth, Campbell & Jones, James W. Dilworth and James R. Drury, Houston, Tex., for defendants Quality Beverage Co., Inc. and J. B. Saragusa.

Aaron Goldfarb, Houston, Tex., for defendants Ajax Distributors, Inc. and Joseph Berlowitz.

Seymour Lieberman, Houston, Tex., for defendants Tarrant Wholesale Drug Co. and L. O. Tarrant.

Burford, Ryburn & Ford, Logan Ford, Dallas, Tex., and Rawlings, Sayers, Scurlock & Eidson, Nelson Scurlock, Fort Worth, Tex., for defendant Texas Wine & Liquor Co., Inc.

L. Edward Mooney, Houston, Tex., for defendant J. E. Winfree, Sr.

William A. Robertson, Houston, Tex., for defendant Eugene A. Boldreghini.

Edward G. Murr, Houston, Tex., for defendants Vincent Vallone and Tony Adams.

Fowler & Conn, Ralph Fowler and L. A. Pontello, Jr., Houston, Tex., for defendants O. L. Mayo, Lou Goldstein, Guy Gibbs, Emma Wade, Gene Duval, Mike Palermo, Albin Pryblek, Walter Silvers, Norman Taylor, Jesse Hernandez, Leon Wise, Benny Clark, Joe Arp, Isaac August, Mel Schaub, E. L. Brooks, Stanley Epstein, and James Meyers.

NOEL, District Judge.

In this civil antitrust suit plaintiffs allege a combination and conspiracy by defendants, in restraint of trade, and seek to recover treble damages under the Sherman Antitrust Act, 15 U.S.C.A. § 1 et seq.

Kenneth Susman, doing business as S.A.G.E. Liquor Concession, and S.A.G.E., Inc. of Houston have filed suit against some thirty-two defendants. Defendants are all in some way connected with the liquor industry; they may be broadly categorized as primarily concerned either with wholesaling or with retailing of alcoholic beverages. Those defendants which will hereinafter be referred to as defendant-retailers are the South Texas Package Stores Association, a non-profit association composed of some 300 retail package liquor dealers in the Houston market area; J. E. Winfree, Sr., the Association's General Counsel; and the following individuals, all of whom were either officers, directors, or principal employees of the Association at the time of the alleged conspiracy: Tony Adams, Joe Arp, Isaac August, Gene Boldreghini, E. L. Brooks, Benny Clark, Gene Duval, Stanley E. Epstein, Guy Gibbs, Lou Goldstein, Jesse Hernandez, O. L. Mayo, James Meyers, Mike Palermo, Albin A. Pryblek, Mel Schaub, Walter Silvers, Norman Taylor, Vincent Vallone, Emma Wade and Leon Wise. Those defendants which will hereinafter be referred to as defendant-wholesalers are Ajax Distributors, Inc., and its principal officer, Joseph Berlowitz; McKesson & Robbins, Inc., and James E. Mills, General Manager of its Houston liquor division; Tarrant Wholesale Drug Co., and its principal officer, L. O. Tarrant; Texas Wine & Liquor Co., Inc.; and Quality Beverage Co., Inc., and its principal officer, J. B. Saragusa.

Plaintiff S.A.G.E., Inc., is a Texas corporation which operates and manages a Houston "discount" house, denominated a "membership department store." It does business by leasing building space and providing incidental services to "licensors" who operate their respective departments on the premises provided by S.A.G.E., Inc. The license, or lease, contracts call for rental payments based, in great part, on departmental gross sales. Plaintiff Kenneth Susman, d.b.a. S.A.G.E. Liquor Concession, is the operator of the liquor department of the store.

Plaintiffs claim to have been injured by a conspiracy which prevented S.A.G.E. Liquor Concession from obtaining for resale those well-known brands of beverages handled in the Houston area exclusively by the defendant-wholesalers. It is alleged that

"defendants have combined and conspired among themselves and with others engaged in the manufacture, importation, and wholesale and retail distribution of alcoholic beverages, in unreasonable restraint of trade of the aforesaid trade and commerce in alcoholic beverages in Texas and among the several states. The purpose and effect of said combination has been (i) to fix, maintain, and make uniform the retail prices of alcoholic beverages in the Houston and South Texas area which are distributed and sold by defendants Ajax, Tarrant, McKesson, Quality, and Texas Wine; (ii) to refuse to sell or allow to be sold, to discourage sales to and effectively boycott plaintiff S.A.G.E. and plaintiff S.A.G.E. Liquors, and to refuse to sell plaintiff S.A.G.E. Liquors regardless of said plaintiff's willingness or unwillingness to maintain retail resale prices established and set by defendant wholesalers; (iii) to encourage members of defendant Association to boycott and discourage the sales of products carried, sold, and distributed by wholesalers who sold to plaintiff S.A.G.E. Liquors; (iv) to encourage and induce wholesalers who sold to plaintiff S.A.G.E. Liquors to cease selling said plaintiff by threats to boycott and the actual boycotting of alcoholic beverages offered to be sold by such wholesalers to defendant Association members; (v) and to effectuate the aforesaid combination and conspiracy between defendant Association and defendants Ajax, Tarrant, McKesson, Quality, and Texas Wine for the purpose and effect of restraining trade and commerce in the South Texas area to the great and lasting injury of plaintiffs and the public."

It is undisputed that the Association, its members, officers, directors, and principal employees were concerned about the entry into the Houston retail liquor market of discount liquor stores. Because of attempts by the Association to obtain legislation preventing the selling of liquor in discount houses, and because of other activities, it became common knowledge that the Association and numerous of its members were opposed to the merchandising of liquor by discount stores.

It is also undisputed that of the eight major liquor wholesalers in the Houston area, three have done business with S.A.G.E. Liquor Concession from the time it opened in May 1960 until the present time. These three wholesalers are not parties to this suit. Four wholesalers, defendants in this action, have never sold to S.A.G.E. Liquor Concession, although they have been repeatedly requested to do so. They are Tarrant Wholesale Drug Co., Quality Beverage Co., Inc., McKesson & Robbins, Inc., and Ajax Distributors. The fifth defendant-wholesaler, Texas Wine & Liquor Co., Inc., originally did business with S.A.G.E. Liquor Concession but discontinued doing so in August 1960, some three months after S.A.G.E. opened. After a change in ownership and an installation of new management in May 1961, Texas Wine & Liquor Co., Inc. resumed doing business with S.A.G.E. Liquor Concession.

Since the filing of this action in October 1960, the parties have made liberal use of the deposition and other discovery methods.

Several motions for summary judgment are now before this Court. The most vigorously urged are those of the defendant-wholesalers, whose counsel contend that no evidence has been obtained or tendered which presents a genuine issue as to any fact material to the alleged involvement of any of them in

any conspiracy. Each defendant-wholesaler therefore seeks summary judgment that he or it was neither involved in nor ever participated in the conspiracy alleged by plaintiffs. Also before the Court is a motion of plaintiffs for summary judgment against the defendant-retailers on the issue of liability, with the amount of damages to be determined by the jury.

■ Although the summary judgment procedure was designed to avoid useless trials, it must be carefully applied so as not to abrogate the rights of litigants. The prevailing view seems to be that expressed in Doehler Metal Furn. Co. v. United States, 149 F.2d 130, 135 (2d Cir., 1945):

"[T]rial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts * *. [A]lthough prompt dispatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay."

The decisions of the Fifth Circuit have made abundantly clear that the summary judgment device is to be used with caution. In warning that

"[w]e are to keep in mind 'that Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them.' "

Judge Jones, in Carantzas v. Iowa Mut. Ins. Co., 235 F.2d 193, 196 (5th Cir., 1956), quoted with approval the pungent language of Judge Hutcheson in Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir., 1940):

"Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial * * *."

See also Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944), and Surkin v. Charteris, 197 F.2d 77, 79 (5th Cir., 1952), both to a like effect.

In Bruce Constr. Co. v. United States, 242 F.2d 873, 874 (5th Cir., 1957) Judge Brown, faced with one of the relatively unusual situations in which summary judgment was appropriate, nevertheless explained that

"[w]e have long recognized that no matter how enticing, in an era of congested dockets, is a device to dispose of cases without the delay and expense of traditional trials with their sometime cumbersome and time-consuming characteristics, summary judgment was not devised for, must not be used as, a substitute for trial. Its wholesome utility is, in advance of trial, to test, not as formerly on bare contentions found in the legal jargon of pleadings, but on the intrinsic merits, whether there is in actuality a real basis for relief or defense. Consequently, where the proceedings have indicated that a genuine issue existed, we have consistently rejected appealing shortcuts and not the less so even though it was likely that on a trial, the trier would resolve the disputed issues as one of fact in the same manner as when thought to have been one of law alone."

■ Certain principles have been evolved, and are to be used in deciding a motion for summary judgment, to safeguard its proper application. Thus, the burden of proof on a motion for summary judgment is upon the movant, Driggers v. Business Men's Assur. Co., 219 F.2d 292, 299 (5th Cir., 1955), and all the evidence must be considered in the light most favorable to the opposing party, Poller v. Columbia Broadcasting

Sys., Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), Kaufman v. Western Union Tel. Co., 224 F.2d 723, 727 (5th Cir., 1955). Furthermore, all inferences of fact from the proofs available must be drawn against the moving party, United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962). Any doubt as to the existence of a genuine issue of material fact must be resolved against the movant, Hawkins v. Frick-Reid Supply Corp., 154 F.2d 88, 89 (5th Cir., 1946); Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1018 (3rd Cir., 1942).

■ It is true, as claimed by defendant-wholesalers, that plaintiffs have presented no testimony of anyone who admitted actually observing, participating in, or having first-hand, certain knowledge of any conspiratorial agreement between the wholesalers, or any of them, or between all or any of them and any of the other defendants. But few conspiracy cases would ever pass the summary judgment stage if that were the burden required to be met by the plaintiffs. All of the parties and witnesses upon whom plaintiffs in this case must rely for first-hand information are either defendants or sympathetic to defendants, and are concerned with the outcome of the case. Under such circumstances, it is not unreasonable to suspect that if there actually had been a conspiracy some of the deposition testimony might be less than candid, and an observation of the witnesses would be helpful in weighing the testimony.

Judge Frank's language in Subin v. Goldsmith, 224 F.2d 753, 758 (2d Cir., 1955), earlier referred to approvingly by the Fifth Circuit in Alabama Great So. R. Co. v. Louisville & N. R. Co., 224 F.2d 1, 5, 50 A.L.R.2d 1302 (5th Cir., 1955), was recently quoted in Shahid v. Gulf Power Co., 291 F.2d 422, 424 (5th Cir., 1961), and has particular pertinence here:

"Particularly where, as here, the facts are peculiarly in the knowledge of defendants or their witnesses, should the plaintiff have the opportunity to impeach them at a trial; and their demeanor may be the most effective impeachment."

His earlier language in Colby v. Klune, 178 F.2d 872, 872–874 (2d Cir., 1949), reversing a summary judgment for the defendants, is also appropriate:

"We have in this case one more regrettable instance of an effort to save time by an improper reversion to 'trial by affidavit,' improper because there is involved an issue of fact, turning on credibility. Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system. For only in such a trial can the trier of the facts * * * observe the witnesses' demeanor; and that demeanor—absent, of course, when trial is by affidavit or deposition—is recognized as an important clue to witness' credibility. When, then, as here, the ascertainment * * * of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error. * * * 'It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true.' * * * Indeed, it has been said that a witness' demeanor is a kind of 'real evidence'; obviously such 'real evidence' cannot be included in affidavits."

Also noteworthy in this context is the remark of the Advisory Committee in explanation of the recent amendment to Rule 56(e) that

"where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in

·order to evaluate their credibility, summary judgment is not appropriate." 6 Moore, Federal Practice 2001–11 (1963 Special Supp.).

Here, plaintiffs contend that the refusal of defendant-wholesalers to sell to S.A.G.E. Liquor Concession is circumstantial evidence of a boycott. Plaintiff Susman testified that before he opened, ·each of the wholesalers individually .agreed or implied that it would sell to S.A.G.E. There is evidence tending to show the following: that the retailers' Association was applying pressure to the wholesalers both before and after Susman opened; that representatives of all ·or most of the wholesalers met with the Association's General Counsel, Winfree, .a defendant in this suit and the loudest voice for the Association in opposition to S.A.G.E. Liquor Concession, prior to the opening of S.A.G.E.; that members of the Association, in their capacities as liquor retailers, intentionally depressed sales of brands carried by those wholesalers who did business with S.A.G.E., .and made special efforts to increase sales ·of brands distributed by those wholesalers who made no sales to S.A.G.E.; that Winfree expressed or implied to at least one wholesaler that the Association would favor those who did not sell to S.A.G.E.; that members of the Association ordered 287 cases of liquor from Texas Wine upon its discontinuing selling to S.A.G.E.; and that all of the defendant-wholesalers sold and continued to sell to various other "discount" stores during their refusal to sell S.A.G.E.[1]

Nevertheless, for the purposes of the pending motions, defendant-wholesalers urge the Court to hold that there is insufficient evidence to raise a genuine issue of fact.

The most recent mandate of the Supreme Court favors the use of even greater restraint than usual in granting summary judgment in this type of case. In Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1961), the Court reversed the granting of a summary judgment for defendant in a civil antitrust case where conspiracy was the key issue, saying

"We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."

Defendant-wholesalers forcefully argue, however, that in this case the Court should not draw from the evidence, largely circumstantial, those inferences which are favorable to plaintiff where contrary inferences could as easily be drawn. Relying upon affidavits and depositions of various defendant-wholesalers in which

---

1. Additionally, and only by way of example, testimony which, when considered in the light most favorable to plaintiff, could raise a fact issue is contained in the second deposition of plaintiff Susman and in the deposition of defendant Pryblek. Susman (pp. 89–96) testifies that he and his attorneys were told by Albin Pryblek, the Executive Secretary of defendant Association and cohort of defendant Winfree during the period when the Association and Winfree were pressuring the wholesalers to do no business with S. A. G. E., that an agreement to boycott S. A. G. E. existed between the retailers and defendant-wholesalers. At the time of the conversations testified to by Susman, Pryblek was not a defendant in this action. Subsequently Pryblek was made a defendant; he was then deposed. In his deposition Pryblek denies that he had knowledge of any conspiracy (pp. 8, 17, 28, 35), but admits that, for personal reasons (pp. 17–18), he gave contrary information to Susman (p. 30). It is also clear from Pryblek's deposition that his interest in the outcome of the litigation has reversed since the conversations with Susman, for in addition to his being made a defendant, his new job requires that he court the good wishes of the defendant-wholesalers (pp. 24, 33–34). Pryblek's admission of having given false information is an example of a factor favoring a full courtroom presentation of testimony so that its credibility may properly be weighed.

each claims that independent business factors prompted his choice not to sell to S.A.G.E., defendant-wholesalers urge that the Court could as easily infer lawful as unlawful conduct. The position of defendant-wholesalers is that without the benefit of a favorable inference the plaintiffs will be unable to show a genuine fact issue.

For support of their argument that where the evidence equally supports contrary inferences, neither may be drawn, defendant-wholesalers turn to the often-made analogy between the summary judgment and the directed verdict. They rely on several cases which appear to lend weight to their argument. See, e. g., Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1933); Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656 (9th Cir., 1963); Pevely Dairy Co. v. United States, 178 F.2d 363 (8th Cir., 1949); Schad v. Twentieth Century-Fox Film Corp., 136 F.2d 991 (3rd Cir., 1943). But all of the above cases dealt with directed verdicts, or motions for judgment n. o. v., and as used by defendant-wholesalers, are good examples why it is an over-simplification to say that the standards to be applied on a motion for summary judgment and on a motion for a directed verdict are the same. In the case of the directed verdict, the party against whom the verdict is sought has had full opportunity to present his evidence in court, and thus the normal rules of evidence concerning permissible inferences are to be used. It is for this reason that the Ninth Circuit, in Independent Iron Works, Inc. v. United States Steel Corp., supra, quoted and relied upon the rule enunciated by the Supreme Court in Baltimore & O. R. Co. v. Groeger, 266 U.S. 521, 524, 45 S.Ct. 169, 170–171, 69 L.Ed. 419 (1925):

> "[I]t is the duty of the judge to *direct a verdict* in favor of one of the parties when the testimony and all the inferences *which the jury could justifiably draw* therefrom

would be insufficient to support a different finding." (Emphasis added.)

But in the case of the motion for summary judgment the party against whom judgment is sought has had no opportunity to present his evidence in court. Thus did the Supreme Court recently reverse a summary judgment for the defendant in a civil antitrust suit, explaining that inferences contrary to those drawn by the trial court, and in favor of the party opposing the motion, might be permissible. The Court then restated the rule:

> "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

To a like effect is the language of Ramsouer v. Midland Valley R. Co., 135 F.2d 101, 106 (8th Cir., 1943), recently quoted with approval by Judge Rives, reversing a summary judgment for defendant, in Shahid v. Gulf Power Co., 291 F.2d 422, 424 (5 Cir., 1961):

> "[T]he court should take that view of the evidence most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence."

Defendant-wholesalers also argue that the recent amendment to Rule 56(e), which became effective July 1, 1963, has an important bearing on their motion. The portions of Rule 56(e) added by the recent amendment provide that:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must*

*set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (Emphasis added.)

Defendant-wholesalers' positions apparently are that the italicized portion of the amended rule places a greater burden on plaintiffs than did the earlier version. The Court is of the opinion that defendants read more into the rule than was intended. The comments of the Advisory Committee *expressly deny that the changes were designed to affect the ordinary standards applicable to the summary judgment motion.* Rather, the express purpose of the amendment was to overcome a line of cases decided by the Court of Appeals for the Third Circuit holding that the unsupported pleadings of the party opposing the motion could alone raise a genuine issue as to a material fact. See 6 Moore, Federal Practice 2001–11 (1963 Special Supp.).

Interestingly, this very same amendment to Rule 56(e) was originally suggested by the Advisory Committee in 1955, but at that time it was not adopted by the Supreme Court. Feeling that the true purpose of the rule was to allow the formal allegations of the pleadings to be pierced so that the merits of the controversy could be reached immediately, the Advisory Committee, then, as more recently, expressed its concern about the Third Circuit rule which substantially removed the utility of the summary judgment procedure. The Committee explained that the then-proposed amendment *"makes it clear that pleading allegations cannot, in themselves, create a genuine issue of material fact when summary judgment is sought."* 6 Moore, Federal Practice 60 (1962 Cumul. Supp.)

Although believing the Third Circuit doctrine to be erroneous, Professor Moore questioned the need for the amendment. He felt that the amendment was susceptible of a broader interpretation than that intended, and that it would be better to rely on "the corrective nature of the judicial process" for a mellowing of the Third Circuit approach. In pointing out the weaknesses of the amendment, he explained that

"There are times when the district court, in the exercise of a sound discretion, should deny a motion for summary judgment although the movant has technically shouldered his burden and the defending party has not come forward with any opposing materials * * *. The practical matter of access to proof, *the need for cross-examination and demeanor testimony at trial,* and other factors may counsel denial, although the defending party has done little or nothing. The summary judgment procedure should remain a vital and effective procedure. Yet at the same time it should not be allowed to become a rigid instrument to cut a litigant off from a live trial of real issues, although the litigant has not amassed the technically proper papers in opposition." (Emphasis added.) 6 Moore, Federal Practice 61 (1962 Cumul. Supp.).

Instead of abating, the Third Circuit interpretation apparently gained greater judicial acceptance. The Committee's notes which accompany the recently adopted amendment cite several cases decided subsequent to 1955 in which summary judgment was denied solely because of the pleadings.

But in this case almost 1300 pages of deposition testimony have been taken, and additional supporting evidence has been submitted. Reliance is not placed upon plaintiffs' bare pleading to present a fact issue. Thus, the Court is of the opinion that the amendment to Rule 56(e) *has no substantial effect on the* determination of these motions for summary judgment.

Considering all of the evidence contained in the numerous depositions and other materials which have been submitted, viewed, as it must be, in the light

most favorable to plaintiffs, and resolving any doubt against the movants, the Court is of the opinion and finds that for the purpose of the present motions a genuine issue as to the existence of a conspiracy has been shown. Therefore, granting of the motion for summary judgment of any of the defendant-wholesalers would be improper. Accordingly, all of the defendant-wholesalers' motions for summary judgment are denied.

The Court is also of the opinion and finds that a genuine issue of material fact exists in regard to plaintiffs' motion for summary judgment against defendant-retailers, and therefore that motion is denied.