Respondent censured.

Harry Strong et al., Respondents, v. Charles Reeves, Appellant.

Third Department, June 13, 1952.

*Theodore Fenstermacher* and *Clayton R. Lusk* for appellant.

*Gerald S. Hewitt* for respondents.

FOSTER, P. J.   Defendant appeals from a judgment of foreclosure and sale of an executory contract for the sale of a farm.

Plaintiffs sold the farm in question to the defendant for the sum of $3,750.   A written agreement was executed by the parties, in which the receipt of $700 of the purchase price was acknowledged by the plaintiffs.   The balance of $3,050 was to be paid by the defendant at the rate of $25 a month, with interest at 6% on unpaid balances of principal.   Such monthly payments were to be first credited against accrued interest and the balance credited to principal.   The defendant had the privilege of making larger payments at any time he desired.   When two thirds of the purchase price had been paid title was to pass, and the plaintiffs agreed to take back a purchase-money mortgage for the balance.

The agreement further provided that taxes and insurance premiums should be adjusted and apportioned up to the day of taking title.   Also that the risk of loss or damage to the premises by fire, prior to the delivery of the deed, was assumed by plaintiffs.   There was no acceleration clause in the agreement providing that the whole principal sum and interest should become due, at the option of the plaintiffs, upon default in the payment of any installment of principal or interest, taxes or insurance premiums, after notice and demand.

On April 13, 1951, plaintiffs brought an action to foreclose the agreement, alleging a default in the payment of an interest installment, and an election to declare an unpaid balance of $2,807.45 of principal due and payable forthwith. Within twenty days after the service of an answer plaintiffs served an amended complaint asking for a reformation of the written agreement and a foreclosure thereof. Reformation was demanded on the basis that through an error of the scrivener the agreement did not express the intent of the parties in two particulars: (1) it should have provided that taxes and insurance premiums be apportioned up to the date defendant took possession; (2) it should have contained an acceleration clause.

After a trial before the court without a jury a judgment was granted in favor of the plaintiffs, reforming the agreement in the particulars requested and directing foreclosure and sale.

It appeared from testimony on the trial, without any dispute, that the agreement was prepared by an attorney selected by the plaintiff Harry Strong. The defendant was not present when the agreement was drawn. The plaintiff mentioned took the instrument from his attorney and presented it to the defendant. Plaintiffs swore that they did not read the agreement. The defendant said that he read it and understood its terms. All parties signed it before a notary public, and one copy was recorded in the County Clerk's Office of Tompkins County.

The plaintiff Harry Strong testified that prior to the execution of the written agreement the defendant orally agreed to pay the taxes and insurance over and above the payments of $25 a month. It is not clear just when defendant took possession of the premises but it seems to have been just before or soon after the agreement was executed. The defendant said there was no discussion about taxes or insurance. He also said that he understood the deal to be just as the agreement specified, that insurance and taxes were to be apportioned on the date title passed, which of course would mean that plaintiffs were to pay them during the interim. He did admit however that he paid the plaintiff Mrs. Strong certain moneys which she said were due for taxes and insurance, although he never saw a tax bill or an insurance policy. He saw on the ledger account of the plaintiffs that taxes and insurance had been charged to him, and he paid them to avoid trouble. Later he said he thought these payments would be credited on the contract price.

Judgment for the plaintiffs was granted upon the theory that there was no mistake as to the agreement between the parties, and that the scrivener erred in reducing the agreement to writ-

ing by not providing that taxes and insurance were to be apportioned at the time defendant took possession rather than at the time title was to pass. The trial court reasoned that the best evidence as to this phase of the agreement lay in the conduct of the defendant when he paid the taxes and insurance for two years without protest, and thus admitted an obligation to do so. Also that if the sellers were bound by the agreement as written to pay the taxes and insurance the balance of the monthly payments, after the deduction of interest, would be so inconsequential that the defendant would be a lifetime in paying the purchase price.

It is true that the error of a scrivener may always be corrected but this rule should only be applied where there is no mistake as to the true agreement (*Born* v. *Schrenkeisen,* 110 N. Y. 55). In this case it is by no means clear that the agreement was what the plaintiffs claim it to have been. They caused the written agreement to be prepared and presented it to the defendant. The burden rested very heavily upon them to prove by clear and convincing evidence that this instrument did not represent the true agreement between them and the defendant. We think they failed to sustain that burden.

It may be that the agreement as written appears improvident from the viewpoint of the plaintiffs. It is the function of the courts however to construe and enforce agreements, not to remake them. Agreements that appear improvident, but nevertheless valid and enforcible, are of common occurrence. If plaintiffs made a bad deal in this case their misfortune is due wholly to their own carelessness in failing to read the instrument prepared at their behest by an attorney of their selection. The record is barren of any deceit practiced by the defendant. Plaintiffs therefore are bound by the original written agreement and estopped from asserting error in its terms (*Dambmann* v. *Schulting,* 75 N. Y. 55; *Pimpinello* v. *Swift & Co.,* 253 N. Y. 159).

Payment by the defendant of certain amounts said to be for taxes and insurance does not justify the judgment as found. Plaintiffs' records indicate that they charged his account with taxes and insurance paid by them and credited his account with periodic cash payments. Although defendant knew this, his failure to object to such charges is not evidence of such a quality as to clearly denote a mistake in the written agreement. The agreement itself provided that taxes and insurance were to be adjusted as of the date title passed. Whether defendant assumed such items would ultimately be credited to the purchase price, or whether he paid them to avoid trouble, makes no difference

so far as the principles involved here are concerned. Reformation may not be had unless the evidence implies a certainty of error involving both parties (*Amend* v. *Hurley*, 293 N. Y. 587).

For the reasons indicated the judgment should be reversed, but not upon the ground of the election of remedies. That doctrine represents a harsh and arbitrary principle designed only to prevent vexatious litigation (*Clark* v. *Kirby*, 243 N. Y. 295). It should be applied only where there has clearly been an irrevocable election, and such is not the case here where the plaintiffs amended their complaint as of course within the time specified in the Civil Practice Act.

The judgment should be reversed, with costs to the defendant, and the matter remitted to the Trial Term for the entry of a judgment in favor of the defendant upon his counterclaim, and to take proof, if proof is necessary, as to the fair market value of the premises as of May 16, 1951.

HEFFERNAN, BREWSTER, BERGAN and COON, JJ., concur.

Judgment reversed, on the law and facts, with costs to the defendant, and the matter remitted to the Trial Term for the entry of a judgment in favor of the defendant upon his counterclaim, and to take proof, if proof is necessary, as to the fair market value of the premises as of May 16, 1951.