Dye, J.
By written instrument dated February 2, 1955, Food Specialties, Inc., a New Jersey corporation, then engaged in the manufacture of bulk and packaged food items, sold certain of its trade names, trade-marks, copyrights, designs and formulas for a variety of its products, as listed on an attached schedule, together with the good will attached thereto, and nothing else, to the appellants Boss. All items so sold were absolutely warranted as to title and freedom from incumbrance (Contract, pars. 1, 4,10). Among the items so sold was a line of Chinese condiments marketed under the brand name of “ Dai-Day ”.
The contract contained a restrictive covenant in the following terms: “ 8. The Party of the First Part for itself and for its officers, Jerome Stein and John Godston, covenant and agree to and with the Parties of the Second Part, their representatives and assigns, that neither the said Party of the First Part nor Jerome Stein nor John Godston will engage directly or indirectly in any capacity whatsoever in the business of manufacturing or selling Chinese condiments under any trade name heretofore employed by the Party of the First Part, anywhere in the United States of America for a period of two (2) years from the date hereof.”
*340 The appellants Ross have brought this action to reform the contract (first cause) on the ground that, by mistake and inadvertence, the restrictive covenant was not correctly worded and, as worded, failed to express the true intent and agreement of the parties in that it omitted between the words “ party of the first part ” and “ anywhere in the United States of America ” the words “ or under any other trade name ”; that in its correct and intended form the restrictive covenant should read: ‘ ‘ that neither the said Party of the First Part nor Jerome Stein nor John Godston will engage directly or indirectly in any capacity whatsoever in the business of manufacturing or selling Chinese condiments under any trade name heretofore employed by the Party of the First Part, or any other trade name anywhere in the United States of America for a period of two (2) years from the date hereof”.
For a second cause, the appellants seek incidental injunctive relief and damages against the defendant Godston as an individual and the Westbury Products Corp. joined as a defendant in this aspect of the case, although not a party to the contract in any way whatsoever, because no doubt of Godston’s personal interest in that company.
We should note too that, at the time the contract was made, Food Specialties was wholly owned by Harold Goldman and respondent, Jerome Stein, his son-in-law, both lawyers, and who, for business reasons, desired to improve the company’s operation by eliminating certain of its lines, including Chinese condiments. While Godston was president of the corporation, he owned no stock. During all times the interested parties, including Ross, knew that Godston was engaged professionally as a food specialist and consultant; that he rendered advice and services to other food manufacturers; that he was actively connected with the Westbury Products Corp. as a stockholder, officer, and personally supervised and managed its manufacturing and selling operations of ingredients for Chinese condiments which it sold under its own brand name “Mil” as well as in bulk to others, and that for some time it had been processing, labeEing and shipping condiments for Food Specialties. Godston did not participate in the preEminary negotiations leading to the making of the within contract. He was called in at the closing. When the subject of a restrictive covenant was *341 brought up, Grodston took the position that he would not sign anything restricting his own activities in the field, stating: “ I would be putting my neck in a noose if I did.” Nonetheless, he was willing to sign, provided the covenant was limited in its application to “ any trade name heretofore employed”. The attorneys for the principal parties then prepared the covenant now sought to be reformed and included same in the contract which was signed and the deal closed.
We have consistently and repeatedly held that before reformation can be granted the plaintiff “ must establish his right to such relief by clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error ’? nor may the plaintiff ‘ ‘ secure reformation merely upon a showing that he or his attorney made a mistake. In the absence of fraud, the mistake shown ‘ must be one made by both parties to the agreement so that the intentions of neither are expressed in it ’ ” (Amend v. Hurley, 293 N. Y. 587, 595; Salomon v. North British S Mercantile Ins. Co., 215 N. Y. 214; Strong v. Reeves, 280 App. Div. 301, affd. 306 N. Y. 666). Here, the proof falls far short of the requirements thus enunciated. Nowhere in the record does it appear that the terms sought to be substituted were ever so framed or mutually agreed upon. It may well be that Ross hoped to get an unlimited restriction, but Grodston, for good reason, did not wish to have his future activities restrained. Reformation is not designed for the purpose of remaking the contract agreed upon but, rather, solely for the purpose of stating correctly a mutual mistake shared by both parties to the contract; in other words, it provides an equitable remedy for use when it clearly and convincingly appears that the contract, as written, does not embody the true agreement as mutually intended.
Furthermore, the covenant as originally drawn was coextensive with the recital clause, the subject matter of the sale and the recapture clause, all of which have been approved by both purchaser and seller and stand unreformed and uncontradicted. Plaintiffs make no claim that the reformation should extend to any part of the contract other than the restrictive covenant as contained in paragraph 8. What they seek in *342 effect is a new and radically different contract by converting the covenant as drawn from a limited to an unlimited restriction. Having failed to establish their right thereto, it necessarily follows that there is also no right to injunctive relief or for damage.
The judgment appealed from is affirmed, with costs.