Burke, J.
The defendants Uhlendorf and Zausmer are the executors of the estate of the deceased Frank A. Ludlam who, with his brother, owned a tract of land in Jamesport, Long Island. Between 1931 and 1944, the Ludlam brothers conveyed some 10 parcels of that tract to various individuals. The original tract was and is bisected by Peconic Bay Boulevard and all of the conveyances by the Ludlam brothers were of parts of the property .situated south of the boulevard. Sometime in 1947, a conveyance of the remaining property (the deed specifically excepting the 10 prior conveyances) was made to the defendant Uhlendorf, as nominee of Frank A. Ludlam. Defendant Uhlendorf thereafter made three additional conveyances of parcels also lying south of the boulevard. During *466 the course of the administration of the estate of Frank A. Ludlarn, an order was .sought from the Surrogate directing the sale of the estate real property. The Surrogate granted an order directing a sale by auction of some seven parcels, including the Jamesport parcel, and also directed that a notice of sale be published in specified newspapers as follows: ‘ ‘ Approximately 20 acres of vacant land in Jamesport on the north side of Peconic Bay Boulevard opposite the intersection of Morningside Avenue and Peconic Bay Boulevard; southerly boundary, frontage on Peconic Bay Boulevard, approximately 1,136 feet; easterly boundary approximately 738 feet, northerly boundary approximately 761.5 feet and westerly boundary approximately 942 feet.” This notice obviously referred only to the vacant land north of the boulevard. However, the order also referred to the contracts of sale under which the property was to be sold at auction. The contract of sale was drawn by the defendant Zausmer using the metes and bounds description contained in the deed of the property from Frank A. Ludlarn to defendant Uhlendorf in 1947 with the exceptions also contained in that deed, plus an additional exception of only one of the subsequent conveyances by defendant Uhlendorf. The metes and bounds description in the contract thus ■included the. entire tract both north and south of the boulevard and excepted 11 deeds (conveyances of parcels south of the boulevard) which were identified only by the name of the grantee, the date of the deed and the date and liber and page of the deed’s recording, thus failing to indicate, without examination of the excepted deeds themselves, the location of the property to be sold as being either north or south of the boulevard. The contract also contained a general description of the property to be sold in the following language: ‘ ‘ Being the premises referred to on the .assesment roll of the Town of Biverhead as. item number 1596, page 136, tax book number 1 ” and this latter description concededly included only the property situated north of the boulevard. At the auction sale conducted in open court, the notice of sale description (“ 20 acres of vacant land on the north side of Peconic Bay Boulevard ”) was read aloud prior to the bidding. Plaintiff was the successful bidder and he signed the contract containing the conflicting descriptions. Defendant Zausmer’s draftmanship problems *467 were not at an end, however. The bargain and sale deed which plaintiff accepted incorporated the broad metes and bounds description together with the 11 excepted deeds, but did not include the reference to the tax assessment roll description which included only the land north of the boulevard.
Because of the discrepancy between the property actually conveyed to the plaintiff by the deed and the description of the property purportedly conveyed by the deed, plaintiff commenced an action against the Ludlam estate, against the defendant title company and against the defendant Uhlendorf individually. In its answer the estate asserted a counterclaim for reformation of the deed so as to limit it to the property north of the boulevard. The defendant title company, in its answer, counterclaimed either to have the policy voided because of plaintiff’s alleged material misrepresentations in applying for the title policy or to have the policy reformed so as to include only property north of the boulevard. The trial court ordered the counterclaims severed and tried before trial of the plaintiff’s causes of action. After a nonjury trial, the counterclaims of all the defendants were dismissed but the Appellate Division, Second Department, modified by providing that the defendants Uhlendorf and Zausmer have judgment on their counterclaim for reformation and affirmed the dismissal of the title company’s counterclaim.
The factual circumstances presented on this record indicate that the defendants Uhlendorf and Zausmer were properly granted judgment on their counterclaim for reformation of the deed. ‘ ‘ Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.” (Born v. Schrenkeisen, 110 N. Y. 55, 59; see, also, Hart v. Blabey, 287 N. Y. 257; Nash v. Kornbloom, 12 N Y 2d 42.) The principle thus formulated is applicable where the parties have a real and existing agreement on particular terms and subsequently find themselves signatories to a writing which does not accurately reflect that agreement, as opposed to a situation where there is a mistake as to the agreement itself on the part of one of the parties. (See Amend v. Hurley, 293 N. Y. 587.) Here, in the circumstances of a court-ordered and conducted auction *468 sale pursuant to announced terms, the latter situation is not involved since the absence of prior negotiations between the parties to the sale obviates the possibility of any claim of a mere mistake in understanding precisely what were the terms agreed upon. The notice of sale description, identifying the property ordered to be sold, was read aloud immediately prior to the bidding and the filed contract by itself could not have indicated whether the property to be sold was situated other than north of the boulevard. The plaintiff, in these circumstances, made a specific bid of $40,000 and there is not the slightest indication in the record that that price was in any way disproportionate to the value of the vacant land north of the boulevard, as specified in the notice of sale. It is, therefore, clear that the parties understood the nature and extent of the property being sold and that the reduction of that understanding to writing involved a mistake of such a fundamental character that the writing embodied an agreement which the parties had not, in fact, made. The facts are, therefore, such that the equitable remedy of reformation was properly granted to the defendants Uhlendorf and Zausmer.
The defendant title company’s counterclaim to declare the policy void is without merit and was properly dismissed. The record is completely devoid of any evidence of any misrepresentation by the plaintiff in applying for the title policy. As to its counterclaim for reformation of the policy, there is no such mutual mistake as would warrant the application of that equitable remedy. What the evidence indicates is that the company’s title examiner discovered two conveyances by defendant Uhlendorf but somehow failed to include them as exceptions both in the title report sent to the plaintiff and in the policy subsequently issued to him. In addition, the report was supplemented by a tax search prepared by the title company which clearly describes the property, in terms of adjoining property owners and in terms of Peconic Bay Boulevard as the parcel’s southerly boundary, and which was inconsistent with the description contained in the company’s report to the plaintiff. The error was clearly the title company’s and the title company’s alone and there are simply no facts upon which to predicate the conclusion that plaintiff somehow shared in that mistake so as to establish the mutuality required for reforma *469 tion. Accordingly, the title company’s counterclaim was properly dismissed. It should be noted, in addition, that this appeal relates only to the counterclaims of the defendants, which were severed for trial before the trial of the causes of action pleaded in plaintiff’s complaint, and that the only issues decided are those relating to these counterclaims.
The order of the Appellate Division should be affirmed, with costs.