In re BRUCAP ASSOCIATES, Debtor.

TILDEN COMMERCIAL ALLIANCE, INC., Plaintiff,

v.

BRUCAP ASSOCIATES, debtor and debtor in possession, Federal Deposit Insurance Corporation, and C. Steven Hackeling as Chapter 7 Trustee for Luis Electrical Contracting Corp., Defendants.

Bankruptcy No. 888–81224–20.
Adv. No. 890–0051–20.

United States Bankruptcy Court,
E.D. New York.

Aug. 31, 1993.

Ira L. Hyams, P.C., Jericho, NY, for defendant FDIC.

Bernard Gluck, Winston & Strawn, New York City, for plaintiff.

C. Steven Hackeling, Huntington, NY, Chapter 7 Trustee.

Stan Y. Yang, Garden City, NY, Office of the U.S. Trustee.

## DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court upon a motion for summary judgment ("Motion") by the plaintiff in the above-captioned adversary proceeding ("Adversary Proceeding").

The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (K) and (O) of title 28. The Motion was made pursuant to Federal Rule of Civil Procedure 56, made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

For the reasons set forth below, the Motion of Tilden Commercial Alliance, Inc. ("Tilden"), plaintiff in the Adversary Proceeding, for summary judgment is GRANTED and Tilden is awarded JUDGMENT that its mortgage and its right to the balance of the proceeds of the sale of the property encumbered by its mortgage are prior to that of the Federal Deposit Insurance Corp. ("FDIC"). Tilden is directed to settle a proposed judgment upon the above-captioned defendants on or before September 24, 1993; such judgment shall be entered by the Clerk's Office and the Adversary Proceeding is thereafter to be closed.

### RELEVANT UNCONTESTED FACTS

Beginning on or about December 3, 1975, a certain entity, Capgro Leasing Corporation ("Capgro Corp."), executed and delivered to Tilden various agreements whereby Tilden agreed to and did make loans and advances to Capgro Corp. Beginning on or

about June 7, 1982, another entity, Capgro Leasing Associates ("Capgro Assocs.") executed and delivered to Tilden various agreements pursuant to which Tilden agreed to and did make loan advances to Capgro Assocs.

On or about August 21, 1984, the above-referenced debtor, Brucap Associates (the "Debtor"), an affiliate of both Capgro Corp. and Capgro Assocs., executed and delivered written guarantees to Tilden ("Guarantees"). Language contained in the Guarantees provided in relevant part: "[W]e [the Debtor] hereby unconditionally guarantee that ... [Capgro Corp. and Capgro Assocs.] will promptly and fully pay and perform all obligations ... when due, at maturity or by acceleration, or when demanded if now due, with interest and other charges and expenses...." Brucap Guarantees of Debts of Capgro Corp. and Capgro Assocs. to Tilden, each dated August 21, 1984.

As collateral security for the Guarantees, the Debtor granted to Tilden a $350,000 mortgage ("Tilden Mortgage"), dated January 6, 1985, on the Debtor's real property located at 720 Northern Boulevard, Great Neck, New York ("Property"). The Tilden Mortgage was recorded on or about February 7, 1985 in the office of the Clerk of Nassau County, New York.

The pertinent language in the Tilden Mortgage purporting to create a lien on the Property to secure the Guarantees provides:

> ... [T]o secure the payment of an indebtedness in the sum of three hundred fifty thousand ($350,000.00) dollars ... to be paid on demand with interest thereon payable on demand to be computed from the date hereof at the rate payable on the guaranteed indebtedness hereinafter referred to, *according to certain guarantees by the mortgagor of even date herewith* of the obligations now or hereafter owing to the mortgagee by [Capgro Corp., Capgro Assocs. and others], the mortgagor hereby mortgages to the mortgagee the [Property].

Tilden Mortgage Document between Tilden and the Debtor, dated January 6, 1985, at 1 (emphasis added).

As security for another loan in the amount of $1,250,000 to the Debtor by First Inter–County Bank of New York ("First Inter–County Bank"), the Debtor granted another lien upon the Property by a mortgage dated November 21, 1985 ("Bank Mortgage"). The Bank Mortgage was recorded by First Inter–County Bank on January 21, 1986. Subsequent to this loan, the FDIC was appointed receiver for First Inter–County Bank and is a named defendant in this Adversary Proceeding.

On November 18, 1988, the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code.

By order dated December 12, 1989, the Court authorized and directed the Debtor to sell the Property; the Property was sold on May 9, 1990. Pursuant to the Court's order, certain entities holding first and second mortgages were paid from proceeds of the sale. The balance of the proceeds were placed into an escrow account administered by the Debtor's attorneys pending resolution of a priority dispute between unpaid mortgagees Tilden and the FDIC.

By filing a complaint with the Court on February 5, 1990, Tilden instituted the Adversary Proceeding pursuant to which it seeks judgment determining the priority of the mortgage liens upon the Property held by Tilden and the FDIC. The priority and/or validity of their liens dictates the priority of their rights to the balance of the proceeds.

In its responsive papers the FDIC attacks the validity of the Tilden Mortgage. The FDIC argues that the Tilden Mortgage, granted by the Debtor to secure its Guarantees of Capgro Corp.'s and Capgro Assoc.'s debts, improperly refers to certain "guarantees created of even date", because the Guarantees were not created of even date. FDIC notes, as stated above, that while the Tilden Mortgage was dated January 6, 1985, the Guarantees were both dated August 21, 1984. FDIC contends, therefore, that because the Guarantees were not

in fact created "of even date", the Tilden Mortgage is void for lack of consideration.

Tilden acknowledges that the Guarantees were not created of even date with the Tilden Mortgage. However, Tilden asserts that the language therein referring to "guarantees by the Debtor of even date herewith" was an inadvertent mistake which should have no detrimental affect upon the validity of the Tilden Mortgage. Tilden also argues that neither it nor the Debtor dispute the validity of the Tilden Mortgage and that it is *their* intentions which must govern its validity.

On or about October 2, 1990 Tilden filed this Motion for summary judgment.

## DISCUSSION

There is no dispute that Tilden's Mortgage was recorded more than one year prior to the FDIC's Mortgage. The sole issue focuses upon the validity of Tilden's prior-recorded Mortgage. Obviously, if Tilden's Mortgage is invalid, the FDIC's Mortgage lien, which now encumbers the balance of the proceeds from the sale of the Property, takes priority.

In support of the validity of the Tilden Mortgage, Tilden has submitted affidavits of Bernard Gluck, former president and chairman of the board of Tilden, and Richard Caplan, a partner of the Debtor ("Affidavits").

Mr. Gluck stated in his affidavit that:

It was my intent, and the intent of all the parties at the time the debtor granted the Mortgage to Tilden, that the Mortgage would secure the Debtor's payment obligation to Tilden under the Guarantees. Although the Guarantees were executed, dated, and delivered on or about August 21, 1984 and not the same date as the Mortgage, it was my understanding, and the intention of Tilden, that the Mortgage was granted to secure repayment under the guarantees. There were no guarantees of the Capgro debtors other than the Guarantees themselves. The reference in the Mortgage to "even date herewith" was an unintended mistake."

Affidavit of Bernard Gluck, dated September 25, 1990, at 5–6.

Mr. Caplan states in his affidavit that:

I executed the Mortgage on behalf of the Debtor.... It was my understanding at the time of the granting of the Mortgage, that the Mortgage would secure the Debtor's payment obligation under the Guarantees. Although the Guarantees were executed, dated, and delivered on or about August 21, 1984, and not the same date as the Mortgage, it was my understanding, and the intention of the Debtor, that the Mortgage was granted to secure repayment under the Guarantees.

Affidavit of Richard Caplan, dated September 10, 1990, at 2 (¶¶ 4, 6).

The language quoted from the Affidavits clearly and unequivocally demonstrates that it was both Tilden's and the Debtor's intention that the Tilden Mortgage provide security for the Guarantees dated August 21, 1984, but that in error, the Tilden Mortgage stated otherwise. The language quoted from Mr. Gluck's affidavit also establishes that, in fact, no *other* guarantees existed to which the Tilden Mortgage could have referred.

■ The contents of the Affidavits have not been attacked. Accordingly, the Affidavits establish the facts sworn to therein and the absence of need for a trial on the issue of the intentions of Tilden and the Debtor. *See Susman v. South Tx. Pkg. Stores Assoc.*, 33 F.R.D. 340, 347–48 (S.D.Tx.1963) (express purpose of amended Federal Rule 56(e) was to "overcome a line of cases ... holding that the unsupported pleadings of the party opposing the motion could alone raise a genuine issue as to a material fact.") (citing 6 Moore's Federal Practice ¶ [56]); *see also Moore's Federal Practice* ¶ 56.11 at 56–99 ("Affidavits may be used by themselves or in conjunction with other materials to pierce the allegations of pleadings and otherwise show that there is no triable issue."). The Court holds that Tilden and the Debtor are in complete agreement as to the terms of the Tilden Mortgage, and that the phrase "of

**14**

even date" represents little more than a minor error in drafting.

■ Because this matter involves the substantive issue of the validity of a mortgage, we look to New York law.

The New York State Court of Appeals has stated, "Where there is no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." *Harris v. Uhlendorf*, 24 N.Y.2d 463, 467, 301 N.Y.S.2d 53, 248 N.E.2d 892 (1969) (citing *Born v. Schrenkeisen*, 110 N.Y. 55, 59, 17 N.E. 339 (1888)). In the case at bar, the "agreement" is the Tilden Mortgage. It is uncontroverted that there is no "mistake about the agreement." *Id.* "Correcting" the Tilden Mortgage in this case simply entails the Court enforcing the agreement as the evidence establishes the parties to it intended; and it is the soundest approach.

In addition, it has been stated that "where the intentions of parties are clear, the court will not elevate form over substance and allow a windfall to a party." *Chemical Bank v. United States Lines (S.A.) (In re McLean Indus., Inc.)*, 132 B.R. 271, 278 (Bankr.S.D.N.Y.1991) (citing *Prudential Ins. Co. v. S.S. Amer. Lancer.*, 870 F.2d 867 (2d Cir.1989)). In *Prudential*, a typographical error listed Prudential's mortgage as $92,885 instead of $92,885,-000. *Id.* at 871. The court wrote: "If the typographical error reduces Prudential's preference by some 92 million, [the debtor] will be the beneficiary of a major windfall. We know of no general principle of law or equity that would in any way support what is so obviously an unjust result." *Id.*

The FDIC stands to receive such a windfall if the Tilden Mortgage is held invalid due to its scrivener's error, and notwithstanding the established intentions of Tilden and the Debtor.

■ The FDIC's assertion that the Tilden Mortgage is void for lack of consideration is also flawed since it has neither alleged nor established that FDIC's predecessor was in any way aware of, or relied on, the mistake. Without any such evidence, or some showing of fraud on the part of Tilden or the Debtor, FDIC should not be permitted to challenge the validity of Tilden's Mortgage. "A strict construction ... should only occur in the face of fraud or, at a minimum, when the [party] can show some injury attributable to [the error]." *Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.*, 621 F.Supp. 198, 215 (S.D.N.Y.1985) (citing *Lake Jackson State Bank v. O/S Kingfish Too*, 240 F.Supp. 450, 452 (S.D.Tex.1965)).

The FDIC has failed to show that a trial for issues of fact is required. As stated in *U.S. v. Bosurgi*, 530 F.2d 1105, 1110 (2d Cir.1976), the Court's function is limited to deciding whether there are any issues of fact to be tried. Rule 56(e) of the Federal Rules of Civil Procedure provides further guidance; in pertinent part, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

The FDIC is the adverse party to the summary judgment motion in the instant case. It has not, by affidavit or otherwise, set forth facts showing there is a genuine issue for trial. Upon the law, it is appropriate that Tilden prevail.

The Court holds that the Tilden Mortgage is not void for lack of consideration or otherwise. Tilden's interest in the balance of the proceeds of the sale of the Property is therefore prior to that of the FDIC.

Tilden's Motion for summary judgment is **GRANTED**. Tilden is awarded **JUDGMENT** that the Tilden Mortgage and Tilden's right to the balance of the proceeds of the sale of the Property is prior to the

FDIC's Mortgage. Tilden is directed to settle a proposed judgment upon the above-captioned defendants in the Adversary Proceeding on or before September 24, 1993; such judgment shall be entered by the Clerk's Office and the Adversary Proceeding is thereafter to be closed.

**SO ORDERED.**