**In re HILLSBOROUGH HOLDINGS CORP., et al., Debtors.**

**James W. WALTER, et al., Plaintiffs,**

**v.**

**The CELOTEX CORPORATION and Jim Walter Corporation, Defendants.**

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1 and 90–11997–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 4, 1996.

---

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, DE.

Richard A. Nielsen, Tampa, FL.

Marsha Griffin Rydberg, Tampa, FL.

Don M. Stichter, Tampa, FL.

Charles E. Koob, Simpson, Thacher & Bartlett, New York City.

Robert D. Drain, Paul, Weiss, Refkind, Wharton & Garrison, New York City.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld LLP, New York City.

Fred Baron, Dallas, TX.

Joseph Rice, Barnwell, SC.

Gene Locks, Philadelphia, PA.

Jeffrey Warren, Tampa, FL.

W. Keith Fendrick, Tampa, FL.

Michael B. Colgan, Tampa, FL.

Howard D. Scher, Philadelphia, PA.

## ORDER (1) GRANTING CERTAIN PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES AND JURY DEMAND AND (2) GRANTING MOTION BY CERTAIN PLAINTIFFS TO DISMISS THE AMENDED COUNTER- CLAIMS AND TO STRIKE THE AF- FIRMATIVE DEFENSES AND JURY DEMAND OF JIM WALTER CORPO- RATION

ALEXANDER L. PASKAY, Chief Judge.

These are confirmed Chapter 11 cases of Hillsborough Holdings/Walter Industries and its 32 wholly-owned subsidiaries (Debtors) and the matters under consideration are several Motions addressed to two Counterclaims filed in the above-captioned adversary proceeding. The Motions basically attack the Counterclaims filed by the Defendants named in the Complaint, i.e., The Celotex Corporation (Celotex) and Jim Walter Corporation (JWC). The Motions, which were filed by the Plaintiffs, Jim Walter et al., who are collectively referred to as the Released Parties, seek an Order dismissing the Counterclaims, an Order striking the Affirmative Defenses set forth by the Defendants in their respective Answers to the Complaint filed by the Released Parties, and an Order striking the demands to trial by jury. The second motion is limited to attacking the timeliness of JWC's filing of an Amended Answer, Affirmative Defenses and Counterclaim. Although that procedural challenge may be well-taken, nevertheless, it may be appropri- ate to consider the substantive merits of the Counterclaims, Affirmative Defenses and de- mands for jury trial, including those as amended.

In order to place the Motions in an under- standable posture, a brief recap of the events leading up to this adversary proceeding is necessary. Prior to the confirmation of the Second Amended Joint and Restated Plan of Reorganization in the Debtors' Chapter 11 cases, the Released Parties, Celotex, JWC and the Debtors entered into a global resolu- tion of the claims of the asbestos-related personal injury claimants who had attempted to pierce the corporate veil between Celotex and the Debtors and assert their claims against the Debtors. The agreement, re- ferred to as the Veil Piercing Settlement Agreement (VPSA), on one hand, required the Debtors to transfer to Celotex $375 Mil- lion in value to fund a trust to be established in Celotex's Chapter 11 case pursuant to its Plan of Reorganization. In exchange, Celo- tex would propose in its Plan of Reorganiza- tion an injunction pursuant to § 524(g) of the Bankruptcy Code or a similar injunction ac- ceptable to the Released Parties. Celotex also agreed to use its best efforts to obtain confirmation of its Plan containing these pro- visions (see ¶ 4(e) of the VPSA).

The VPSA, executed on November 22, 1994, was presented to the Celotex Court for consideration on December 20, 1994. On February 13, 1995, the Celotex Court ap- proved the same and directed Celotex to perform according to its terms. The VPSA was thereafter presented for this Court's consideration, and after due notice to all parties of interest, was approved and incor- porated into, and formed a central and indis- pensable part of, the Second Amended and Restated Joint Plan of Reorganization which was confirmed by this Court on March 25, 1995. Neither the Celotex Court's Order approving the VPSA nor the Order of Confir- mation were appealed; thus, the Orders be- came final and the terms of the VPSA be- came binding on all parties, especially, of course, those who were signatories to the VPSA. The Debtors promptly transferred the $375 million consideration for the VPSA

to Celotex, which amount is currently held in trust by Celotex.

On January 27, 1995, Celotex filed its Plan of Reorganization which was in compliance with the VPSA and contained the provisions for the § 524(g) injunction or its functional equivalent. Thereafter, on June 1, 1995, Celotex filed its First Amended and Restated Joint Plan of The Celotex Corporation and Carey Canada, Inc. Subsequently, October 19, 1995, Celotex filed the Second Amended and Restated Joint Plan of Reorganization for The Celotex Corporation and Carey Canada, Inc. The present controversy is caused by the filing of Celotex's Modified Second Amended and Restated Joint Plan of Reorganization for The Celotex Corporation and Carey Canada, Inc. (Celotex's Supplement), on April 1, 1996, which, according to the Released Parties, did not contain the protection they bargained for and thus violated the VPSA.

In order to obtain redress, the Released Parties filed their two-count Complaint in this adversary proceeding seeking, first, a declaration that Celotex's Supplement to its Second Amended and Restated Joint Plan of Reorganization did not contain the § 524(g) provision agreed upon by Celotex and JWC and, thus, was in violation of the VPSA. Second, the Released parties sought a mandatory injunction from this Court compelling Celotex to amend its Modified Second Amended and Restated Joint Plan to incorporate a provision for a § 524(g) injunction or its functional equivalent. On March 29, 1996, the Released Parties filed their Motion For Summary Judgment and requested this Court hear their Motion on an expedited basis. This Court scheduled a hearing on the Motion on an emergency basis, even before the Defendants pled to the Complaint. However, at that hearing, the Defendants' challenge as to the timing of the hearing was found to be valid and this Court rescheduled the hearing on the Motion in order to enable the Defendants to conduct discovery. On April 4, 1996, JWC filed its Answer, Affirmative Defenses and Counterclaim, which was followed by the Answer and Counterclaim by Celotex filed on April 22, 1996.

On April 26, 1996, Celotex filed its own Motion For Summary Judgment in which JWC promptly joined in. The first Motion under consideration attacking both counterclaims was filed by the Released Parties on April 30, 1996. On May 1, 1996, JWC filed an Amended Answer, Affirmative Defenses and Counterclaim, which was again challenged by the Released Parties, who filed a Motion To Dismiss the Amended Counterclaim on May 7, 1996. At the rescheduled hearing, this Court heard argument of counsel and took the Motion For Summary Judgment under advisement.

On May 28, 1996, this Court entered its Order on the Motion For Summary Judgment of the Released Parties, granting their Motion in part and denying the Motions for Summary Judgment filed both by Celotex and JWC. This Court held that the VPSA was a valid and binding agreement on all signatories, including Celotex and JWC, that Celotex's Supplement did not contain a § 524(g) injunction, and that Celotex did not propose a functionally equivalent alternative to the Released Parties, thus violating the VPSA.

It should be evident from the foregoing that all issues raised by the Complaint, and the Answers and Affirmative Defenses thereto, have been resolved by the Order on the Motions For Summary Judgment entered on May 28, 1996. Nevertheless, a brief comment on the so-called Affirmative Defenses are in order. First, most of the Affirmative Defenses are nothing more than reassertions of jurisdictional challenges to the Complaint, all of which have been previously rejected by this Court. Second, none of the others even remotely resemble the affirmative defenses recognized by Federal Rule of Civil Procedure 8, as adopted by Federal Rule of Bankruptcy Procedure 7008(c). Based on the foregoing, this Court is satisfied that the Motions to Strike the Affirmative Defenses, as amended, are well-taken and the same shall be stricken.

This leaves for consideration the Motion to Dismiss the Counterclaim and the Motions to Strike the Demand For Trial by Jury. The Counterclaims of Celotex and the original and the amended Counterclaim of JWC con-

sist of three separate Counts. In Count I, Celotex and JWC contend that some of the Released Parties, namely Baron & Budd, Ness Motley Loadholt Richardson & Poole, and Greitzer and Locks and other Veil Piecing claimants are actively opposing the Plan proposed by Celotex and are engaging in other actions designed to frustrate and impede Celotex's ability to perform its contractual obligations under the VPSA, thereby breaching the VPSA themselves. In Count II, Celotex and JWC seek damages on the basis that the Released Parties' actions demonstrate that they did not negotiate the VPSA in good faith. In Count III, Celotex and JWC contend that the VPSA does not obligate Celotex to propose a Plan of Reorganization that is conditioned upon obtaining a § 524(g) injunction. It should be pointed out that no claim was asserted by the Released Parties that Celotex cannot obtain confirmation of any Plan unless that Plan contains a complete § 524(g) injunction or a functional equivalent acceptable to the released parties. Instead, their position was, and still is, that Celotex was obliged to include a provision for a § 524(g) injunction or its functional equivalent, if acceptable to the Released Parties, in its proposed Plan and to use its best efforts to obtain confirmation of its proposed Plan.

In the alternative, the Defendants contend that if the VPSA, in fact, requires such a condition than this was due to either mutual mistake between the parties or a fraudulent misrepresentation on the part of the Released Parties. Based on this, Celotex and JWC seek a reformation of the VPSA in order to reflect the true intention of the parties.

■ Before considering the Motions to Dismiss the Counterclaims, it should be noted at the outset that, even assuming without conceding, that the Counterclaims of Celotex and JWC do state a viable claim for which relief can be granted, the claims are clearly equitable in nature even though there is a claim for damages. Thus, there is no right to a trial by jury. The only basis of the claim that there is a right to a trial by jury is the claim for money damages arising out of the alleged contractual breach and the alleged breach of a duty to negotiate in good

faith. Apart from the fact that there is nothing in the Counterclaim which even remotely pleads facts to show that there was such a duty, clearly this claim is, if valid, a questionable proposition which is merely incidental to the equitable claims raised.

■ It cannot be seriously contended that the claim for reformation is anything but purely equitable. 66 *Am Jur* 2d Reformation § 1. The reformation of a written instrument is one of the oldest branches of equity jurisprudence and any action for reformation is only cognizable in equity. A request for a damage award incidental to or intertwined with injunctive relief may be considered equitable. *American Universal Ins. Co. v. Pugh,* 821 F.2d 1352 (9th Cir.1987). Where the cause of action seeking monetary relief is integral to the equitable relief sought, the action lies in equity and there is no right to trial by jury. *In re Paula Saker Co.,* 37 B.R. 802 (Bankr.S.D.N.Y.1984). Based on the foregoing, this Court is satisfied that the demands for trial by jury is without merit and should be stricken.

■ Ordinarily a Complaint should not be dismissed with prejudice unless it is abundantly clear that the defect in pleading is not curable and the plaintiff cannot, under any theory of law, sustain a viable claim for which relief can be granted. *In re Johannessen,* 76 F.3d 347 (11th Cir.1996). It is equally well-recognized that doubts must be resolved in favor of the pleader and against the party who seeks dismissal. However, even applying the foregoing general principles to Count I of the Counterclaims under consideration, this Court is satisfied that Count I fails to state a claim for which relief can be granted and, under the controlling facts of this controversy between the parties, the defects are not curable. This is so, not for the reasons raised in the Motion to Dismiss, but because the claims asserted by Celotex and JWC in their original and amended Counterclaims have absolutely nothing to do with the claims asserted or the relief sought by the Released Parties in their Complaint. Moreover, as to Count I, whether or not the parties are, in fact, engaging in the conduct charged, this Counterclaim is not for this Court to consider because it is evident that Celotex has ample

means to block the named parties's alleged obstructionist conduct before the Celotex Court.

The alternative allegation in this Count is that the named parties are frustrating and impeding the ability of Celotex to perform its contractual obligations under the VPSA, thereby breaching the VPSA themselves. Of course, if this obstructionist tactic is designed to prevent Celotex from proposing a Plan of Reorganization which only includes its version as to what was its obligations are under the VPSA, then Celotex is correct. However, since this Court already ruled that § 4(e) of the VPSA required Celotex to propose § 524(g) channelling injunction, which encompasses all provisions of § 524, including (2)(ii)(IV)(bb), and that Celotex must use its best efforts to seek confirmation of such Plan, then the Plan of Reorganization filed by Celotex, as supplemented, does indeed violate the VPSA and the named parties have an absolute right to assert their position in opposing the Plan of Reorganization of Celotex as supplemented. Accordingly, this Court is satisfied that the claim set forth in Count I of the Counterclaims of both Celotex and JWC cannot be sustained and should be dismissed with prejudice.

The claim in Count II is based on the allegation that the Released Parties did not negotiate the VPSA in good faith. As noted earlier, the VPSA was executed and signed by the parties, including Celotex and JWC on August 1, 1994. It was approved by the Celotex Court, which also expressly directed Celotex to perform its undertaking under the VPSA. Next, the VPSA was also approved by this Court and was expressly incorporated by the Debtors in the Second Joint Amended Restated Plan of Reorganization which was confirmed by this Court on March 25, 1995. None of these Orders were appealed; thus, they represent a final determination of the parties' rights under the VPSA and it is mighty late, more than a year later, to raise this issue for the first time, even if one construes the claim to be one asserted pursuant to Federal Rule of Bankruptcy Procedure 9024, adopting Federal Rule of Civil Procedure 60(b) which sets forth the procedure for obtaining relief from

judgments. This Rule provides that a Court may relieve a party from the operation of an order or a judgment based on "mistake, inadvertence, surprise or excusable neglect," (F.R.Civ.P. 60(b)(1)) or "fraud . . . . or other misconduct of an adverse party" (F.R.Civ.P. 60(b)(3)). This Rule has been applied in the bankruptcy context in connection with an attempt to reform a court-approved settlement agreement. *In re West Texas Marketing Corp.*, 12 F.3d 497 (5th Cir.1994).

All claims of the counterclaims are based, in essence, on an alleged mistake which is, indeed, one ground on which one may obtain relief from a judgment. The problem is that relief sought under this ground must be brought within one year of the judgment involved and it is undisputed that all orders which are relevant to the issue have been entered more than one year ago. F.R.Civ.P 60(b)(1). In addition, even if there is an allegation of fraud on behalf of the Released Parties, nothing like it is pled here, and relief on this ground also must be brought within one year. F.R.Civ.P 60(b)(3).

It is true that Rule 60(b) also permits independent actions seeking relief from judgments or orders or proceedings which apparently is not subject to the one-year limitation. It is equally true, however, that the resort to an independent action may rarely be deemed proper, and will be allowed only under unusual and exceptional circumstances. 11 Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2868 at 239. This view is clearly supported by a universally-recognized interest in finality of judgments, and relief is thus only warranted in "exceptional circumstances." *Mallory v. Eyrich*, 922 F.2d 1273, 1281 (6th Cir.1991). The judgment sought to be set aside must impose extreme hardship if the relief is not granted. *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir.1977). The importance of finality of Orders Confirming Plans of Reorganization assumes a special significance because innocent parties rely on, and change their position in reliance on, the finality of the Order of Confirmation. This is recognized by Section 1144 of the Code itself, which requires that any attempt to revoke and set aside an Order of Confirmation must

be brought within 180 days of the entry of the Order and may only be brought based on fraud.

▇ An independent action under the Rule based on fraud may be brought outside of the one-year limitation but it must be based upon fraud upon the Court and not fraud upon a party which, as noted, must be brought within one year of the entry of the Judgment or the Order. The fraud upon the Court includes only that species of fraud which does or attempts to defile the Court itself or fraud that is perpetrated by officers of the Court. *The Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir.1985). It is the type of fraud which prevents or impedes the proper functioning of the judicial process, and it must threaten public injury, as distinguished from injury to a particular litigant. *SEC v. ESM Group Inc.,* 835 F.2d 270 (11th Cir.), *cert. denied, sub. nom. Peat Marwick Main & Co. v. Tew,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

There is nothing in this record to warrant the finding that the Released Parties perpetrated a fraud not only on the Celotex Court but also on this Court. Nor are there any exceptional circumstances to justify this Court's entertaining the belated claim of alleged mutual mistake or unilateral mistake coupled with fraud.

▇ This leaves for consideration the claim for reformation of the VPSA set forth in Count III of the counterclaims of Celotex and JWC, as amended. It cannot be gainsaid that the VPSA is governed by the applicable laws of the State of New York. The VPSA specifically so provides. The claim for reformation is based on the proposition that Celotex and JWC should be permitted to establish, by parol evidence, that either there was a mutual mistake by the parties to the VPSA or a unilateral mistake and fraud by the Released Parties. The Courts of New York have consistently refused to permit parol evidence to reform a contract on these grounds. "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain." *George Backer Management Corp.,* 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (N.Y.1978) *(citing Ross v. Food Specialties,* 6 N.Y.2d 336, 189 N.Y.S.2d

857, 160 N.E.2d 618 (N.Y.1959). Further, "New York courts ... maintain[ ] a heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties." *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 574, 498 N.Y.S.2d 344, 489 N.E.2d 231 (N.Y.1986); *see also George Backer, supra,* 46 N.Y.2d at 219–20, 413 N.Y.S.2d 135, 385 N.E.2d 1062. As one Court has cautioned, "[b]ecause the doctrine of reformation permits a party to an integrated agreement to "end run" the parol evidence rule, it has been limited both substantively and procedurally." *In re Embers 86th Street, Inc.,* 184 B.R. 892, 897 (Bankr. S.D.N.Y.1995) (citing *Chimart,* 66 N.Y.2d at 574, 498 N.Y.S.2d 344, 489 N.E.2d 231). Under New York law, a contract may be reformed only if there is mutual mistake or a unilateral mistake by one party and fraud by the other. *See George Backer, supra,* 46 N.Y.2d at 218–19, 413 N.Y.S.2d 135, 385 N.E.2d 1062; *John Hancock Mutual Life Ins. Co. v. Carolina Power & Light Co.,* 717 F.2d 664, 671 (2d Cir.1983); *Brandwein v. Provident Mut. Life Ins. Co.,* 3 N.Y.2d 491, 496, 168 N.Y.S.2d 964, 146 N.E.2d 693 (N.Y. 1957).

▇ A party seeking reformation must "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *George Backer, supra,* 46 N.Y.2d at 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062; *see also William P. Pahl Equipment Corp. v. Kassis,* 182 A.D.2d 22, 29, 588 N.Y.S.2d 8, 12 (1st Dept. 1992); *South Fork Broadcasting Corp. v. Fenton,* 141 A.D.2d 312, 528 N.Y.S.2d 837 (1st Dept.1992). The Counterclaims are simply silent on the exact terms allegedly agreed upon by the parties. The only reference is to a requirement that Celotex have "flexibility" to propose a plan not conditioned upon a § 524(g) injunction. Both JWC and Celotex do not say how this was supposed to have been memorialized in the VPSA other than as set forth in the actual, final language of the contract. "The very indefiniteness ... confirms this statement as an expression of opinion rather than of fact." *George Backer, supra,* 46 N.Y.2d at 220, 413 N.Y.S.2d 135, 385 N.E.2d 1062; *see also South Fork, su-*

*pra,* 141 A.D.2d at 315, 528 N.Y.S.2d 837 (rejecting "vague and conclusory terms . . . of what the agreement should read" in favor of "the clear, unambiguous terms of the contract").

 Mutual mistake occurs where all parties have reached a "real and existing agreement on particular terms" and all the parties decide they are bound to a writing which does not accurately express their mutual agreement. *Harris v. Uhlendorf,* 24 N.Y.2d 463, 467, 301 N.Y.S.2d 53, 56, 248 N.E.2d 892, 894 (N.Y.1969). Mutual mistake does not occur "where there is a mistake as to the agreement itself on the part of one of the parties." *Id.* To be truly mutual, each party must be mistaken as to the same facts. *Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp.,* 682 F.2d 330, 332 (2d Cir.1982) (applying New York law).

 JWC and Celotex allege two claims for reformation. First, they contend there was a mutual mistake. They base this allegation upon an alleged meeting between representatives of Celotex and representatives of Walter Industries. But they overlook the fact that this is a multiple-party contract. Thus, they must show a single mistake shared by all the parties to the contract, which they clearly will not be able to do. *George Backer, supra,* 46 N.Y.2d at 218–19, 413 N.Y.S.2d 135, 385 N.E.2d 1062; *Harris v. Uhlendorf, supra,* 24 N.Y.2d at 467, 301 N.Y.S.2d 53, 248 N.E.2d 892; *Alden Auto Parts, supra,* 682 F.2d at 332. JWC and Celotex also claim that they were mistaken and that there was fraud by all of the other parties to the VPSA. But they have not pleaded anything approaching fraud. In particular, they have not met the requirements of Fed.R.Civ.P. 9(b), which requires that fraud be pleaded with particularity.

Both Celotex and JWC had ample opportunity to seek clarification either before this Court or before the Celotex Court if they were apprehensive as to what was intended by the requirement for a § 524(g) injunction and the purpose and the scope of such an injunction. This Court has no difficulty in concluding that it was, and certainly should have been, crystal clear to Celotex and JWC that unless the Debtors and the other Released Parties obtain the maximum protection available under the law against any asbestos-related personal injury claims and the veil piercing claim is settled, no Plan of Reorganization, except a total liquidation Plan, could be found feasible in the Chapter 11 case of the Debtors.

Viewing the pleading concerning the reformation claim in the most favorable light, this Court is satisfied that the Defendants have failed to plead a viable claim for reformation under the applicable New York law.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Certain Plaintiffs' Motion to Dismiss Defendants' Counterclaims and to Strike Affirmative Defenses and Jury Demand be, and the same is, hereby granted and the Affirmative Defenses and Demand for Jury Trial be and the same are hereby stricken and the Counterclaims be and the same are hereby dismissed with prejudice.

It is further

ORDERED, ADJUDGED AND DECREED that Certain Plaintiffs' Motion to Dismiss the Amended Counterclaims and to Strike the Affirmative Defenses and Jury Demand of Jim Walter Corporation be, and the same is, hereby granted and the Affirmative Defenses and Demand for Jury Trial, as amended, be and the same are, hereby stricken and the Amended Counterclaims be and the same are hereby dismissed with prejudice.

DONE AND ORDERED.